STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
WILLIAM SIMMONS, DEFENDANT-APPELLANT.

Argued September 26, 1968—Decided November 4, 1968.

*Mr. Mark D. Larner* argued the cause for appellant (*Mr. Peter Murray,* Public Defender of the State of New Jersey, attorney).

*Mr. James R. Zazzali,* Assistant County Prosecutor, argued the cause for respondent (*Mr. Joseph P. Lordi,* County Prosecutor of Essex County, attorney).

PER CURIAM: The defendant was convicted of entry with intent to rape in violation of *N. J. S.* 2A :94–1 and of forcible carnal knowledge of Mary Ann Porter in violation of *N. J. S.* 2A :138–1. The Appellate Division sustained the convictions in an opinion which comprehensively set forth the pertinent facts and legal principles. *State v. Simmons,* 98 *N. J. Super.* 430 (*App. Div.* 1968). We affirm substantially for the reasons expressed by the Appellate Division subject, however, to the following additional comments.

The defendant was firmly identified in court by Larry Porter as the man who had attacked his sister Mary, a 16-

year-old deaf-mute with an intellectual age of less than 7 years. After the attack Mary was taken to the Newark City Hospital and thereafter, while she was sitting in the emergency room, the defendant was brought there by police officers. Mary was still in a state of excitement and became upset and hysterical when confronted by the defendant. She was asked by her mother and the police officers whether the defendant was the man who had attacked her and, although she could not speak, she made identification by her actions including the shaking of her head in the affirmative and the pointing to her private parts and to the defendant. The trial judge found that she was not competent to testify at the trial but he admitted testimony by others with respect to her identifying actions. In rejecting the defendant's contention that this constituted inadmissible hearsay, the Appellate Division noted that Mary's identification was made under curcumstances "which reasonably precluded suspicion of unfairness or unreliability" and "constituted a link in the chain of circumstantial evidence implicating defendant." 98 *N. J. Super.*, at 437. Many cases have admitted comparable out-of-court identifications as part of the *"res gestae"* (see *McCormick, Evidence* 585 (1954)) and as "spontaneous and contemporaneous statements." Evidence Rule 63(4). *See State v. Gorman,* 229 *Minn.* 524, 527, 40 *N. W. 2d* 347, 349 (1949); *People v. Butler,* 249 *Cal. App. 2d* 799, 806, 57 *Cal. Rptr.* 798, 803 (*Ct. App.* 1967); *State v. Lasecki,* 90 *Ohio St.* 10, 18–20, 106 *N. E.* 660, 663 *L. R. A.* 1915 *E.* 202 (1914); *State v. Hutchison,* 222 *Or.* 533, 542–544, 353 *P. 2d* 1047, 1052, 83 *A. L. R. 2d* 1361 (1960); *Soto v. Territory,* 12 *Ariz.* 36, 94 *P.* 1104 (1908); *Walker v. State,* 162 *Tex. Cr. R.* 408, 286 *S. W. 2d* 144 (*Ct. Crim. App.* 1955), *cert. denied,* 350 *U. S.* 931, 76 *S. Ct.* 299, 100 *L. Ed.* 814 (1956); 6 *Wigmore, Evidence* § 1751, at 156, § 1761, at 175 (*3d ed.* 1940); *Annot., Declarant's age as affecting admissibility as res gestae,* 83 *A. L. R. 2d* 1368 (1962). Compare *State v. Balles,* 47 *N. J.* 331, 338–339 (1966), *appeal dismissed,* 388 *U. S.* 461, 87 *S. Ct.* 2120, 18 *L. Ed. 2d* 1321 (1967).

 The lapse of some period of time between the attack and Mary's identification did not preclude the *res gestae* approach or render the spontaneous declaration doctrine inapplicable for she was still in a state of excitement and the psychological guarantee of trustworthiness was still present. *See Fagan v. City of Newark,* 78 *N. J. Super.* 294, 303–304 *(App. Div.* 1963) ; *Commonwealth v. Cupps,* 157 *Pa. Super.* 341, 43 *A. 2d* 545, 546 *(Super. Ct.* 1945). Nor did the fact that the identification was made "in response to inquiry" *(Beausoliel v. United States,* 71 *U. S. App. D. C.* 111, 107 *F. 2d* 292, 295 (1939) ) remove its spontaneous nature within the contemplation of the doctrine. *See State v. Gorman, supra,* 229 *Minn.,* at 527, 40 *N. W. 2d,* at 349; *State v. Woolery,* 93 *Ariz.* 76, 83, 378 *P. 2d* 751, 757 (1963). And, as here, courts elsewhere have generally held that the declarant's incompetence to testify at the trial did not prevent the admissibility of the declaration. *McCormick, supra,* at 582 :

" \* \* \* it is held that evidence of spontaneous declarations of infants is admissible despite the incompetency of the child as a witness. Such is also the rule in the case of an insane declarant, or one incompetent by reason of conviction of a felony, or where the declaration was made by the husband or wife of the accused in a criminal case."

*See State v. Brown,* 278 *Minn.* 186, 153 *N. W. 2d* 229, 232 (1967) ; *State v. Hutchison, supra,* 353 *P. 2d,* at 1052.

 The defendant cites the Supreme Court's recent opinions in *United States v. Wade,* 388 *U. S.* 218, 87 *S. Ct.* 1926, 18 *L. Ed. 2d* 1149 (1967) and *Gilbert v. State of California,* 388 *U. S.* 263, 87 *S. Ct.* 1951, 18 *L. Ed. 2d* 1178 (1967) but we need not consider whether they have application to the type of identification dealt with here *(see State v. Matlack,* 49 *N. J.* 491, 499 *n, cert. denied,* 389 *U. S.* 1009, 88 *S. Ct.* 572, 19 *L. Ed. 2d* 606 (1967) ; *cf. Rivers v. United States,* 400 *F. 2d* 938 (5 *Cir.* 1968) ) for they were handed down after the defendant's trial and convictions and admittedly they have no retroactive effect. See *Stovall v.*

*Denno,* 388 *U. S.* 293, 87 *S. Ct.* 1967, 18 *L. Ed. 2d* 1199 (1967). Nor do we find any denial of due process since "the totality of the circumstances" (*Stovall v. Denno, supra,* 388 *U. S.,* at 302, 87 *S. Ct.* 1967, 18 *L. Ed. 2d,* at 1206) surrounding the confrontation suggests no impropriety. As the Appellate Division noted, the close proximity in time between the attack and the confrontation insured a fresh memory and the "lack of a lineup" did not, in view of the particular circumstances, evidence any fundamental unfairness. 98 *N. J. Super.,* at 438. See *Hanks v. United States,* 388 *F. 2d* 171, 174 (10 *Cir.* 1968) ; *Commonwealth v. Blackburn, Mass.,* 237 *N. E. 2d* 35, 37 (1968) ; *State v. Keeney,* 425 *S. W. 2d* 85, 90 (*Mo.* 1968). Since the evidence as to the out-of-court identification was admissible under recognized exceptions to the hearsay rule, any claim that its receipt unconstitutionally deprived the defendant of his right "to be confronted with the witnesses against him" (*N. J. Const. Art.* I, *par.* 10.; *U. S. Const. Amend.* VI) must clearly fail. See *Kay v. United States,* 255 *F. 2d* 476, 480 (4 *Cir.*), *cert. denied,* 358 *U. S.* 825, 79 *S. Ct.* 42, 3 *L. Ed. 2d* 65 (1958) ; *Matthews v. United States,* 217 *F. 2d* 409, 418 (5 *Cir.* 1954) ; *United States v. Leathers,* 135 *F. 2d* 507, 511 (2 *Cir.* 1943).

 The defendant's convictions were after a retrial. At his first trial the jury disagreed and the retrial began soon thereafter. Defense counsel applied for a transcript of the first trial in order that he might use it in cross-examination. His application was denied by the trial judge with the comment that the testimony elicited during the first trial was undoubtedly still fresh in defense counsel's mind. We find nothing in the Supreme Court's opinions which may fairly be said to go so far as to impose upon the States any constitutional obligation to follow the course of furnishing indigent defendants with free transcripts of incompleted trials for use at retrials. *Cf. Griffin v. People of the State of Illinois,* 351 *U. S.* 12, 76 *S. Ct.* 585, 100 *L. Ed.* 891, 55 *A. L. R. 2d* 1055 (1956) ; *Eskridge v. Washington State Board,* 357

*U. S.* 214, 78 *S. Ct.* 1061, 2 *L. Ed. 2d* 1269 (1958); *Draper v. State of Washington,* 372 *U. S.* 487, 83 *S. Ct.* 774, 9 *L. Ed. 2d* 899 (1963). Despite this, there is very much to be said in favor of our adopting such course as a matter of fair administration of criminal justice. *Cf. McNabb v. United States,* 318 *U. S.* 332, 340, 63 *S. Ct.* 608, 87 *L. Ed.* 823, 824 (1943). Such transcripts are of obvious importance and their availability will undoubtedly tend to insure fair trial without imposing any undue burdens on government.

██ Though we believe that the trial judge should not have denied the application for the transcript, we find nothing in the record before us to indicate that the denial resulted in any prejudice to the defendant. The time between the first and second trials was very short, defense counsel had his full trial notes before him, and, so far as appears, no witness changed his story in any manner which might have opened him to significant attack through the use of his earlier testimony. Under the circumstances there is no legitimate basis for reversal though we reserve to the defendant the right to obtain the free transcript now and to seek a new trial if he can make an affirmative showing before the trial judge of prejudice resulting from the unavailability of the transcript at the retrial.

Affirmed.

*For affirmance* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL and HANEMAN — 6.

*For reversal* — **None.**