**STATE of Tennessee, Appellee,**

v.

**Marzell WILLIAMS, Jr., Appellant.**

Court of Criminal Appeals of Tennessee, at Jackson.

Feb. 14, 1980.

Ural B. Adams, Jr., Shelby Co. Public Defender, Memphis, Walker Gwinn, Appellate Counsel, Asst. Public Defender, Public Defender's Office, John Hough, William B. Hackett, Asst. Public Defenders, Memphis, for appellant.

William M. Leech, Jr., State Atty. Gen., Charles L. Lewis, Asst. State Atty. Gen., Nashville, Hugh W. Stanton, Jr., Dist. Atty. Gen., Neil G. Taylor, Asst. Dist. Atty. Gen., Memphis, for appellee.

## OPINION

BYERS, Judge.

The defendant was convicted of criminal sexual conduct in the third (3rd) degree and sentenced to serve not less than two (2) years nor more than five (5) years.

The defendant for issue says the evidence is insufficient to sustain the verdict and the testimony of the mother of the female victim and of the police officer who testified to what the female had told them was inadmissible because the victim did not testify.

The judgment is reversed and the case is remanded for a new trial.

On December 5, 1978, Belinda Greer, her husband, James Greer, and children, Helene Harris, Andre Greer, and Jimmy Greer, were living in an apartment in Memphis. Helene is James' step-child; and Andre and Jimmy are Belinda's step-children. Belinda and James worked during the daytime; and on December 5, 1978, the defendant was babysitting with Andre and Helene while Jimmy was attending school. Andre was four (4) and Helene was five (5). James, the father, returned home near 4:30 p. m. and Belinda, the mother, returned home shortly after 6:00 p. m. The defendant's babysitting duties ended when James returned home and he was not with the children after that time.

Shortly after Belinda arrived home, James left the apartment to go to the store. Helene then told the mother her bottom was hurting. Belinda examined the child and discovered an injury to her rectum. This was at approximately 6:30 p. m.

The police were called and came to the apartment.

An officer testified that at approximately 7:15 p. m. to 7:30 p. m. he found a tissue which this child had used to clean herself after she had been assaulted. He found it had fresh, damp blood on it.

The child was examined by medical personnel. Laboratory analysis of the evidence collected at the examination shows she was raped anally. In fact, there is no dispute in the evidence as to this.

The mother and the police officer were allowed to testify in detail as to what the child had told them of the assault and also that she identified the defendant as the one who did it.

Helene did not testify because the trial judge ruled she was unable to understand right from wrong and the nature and obligation of an oath. The defendant testified he did not sexually assault the child.

The evidence against the defendant, with the exception of the testimony of Helene's recitation, was wholly circumstantial. Applying the rules on appeal to this evidence, we find it is sufficient to support a finding of guilt. However, we are of the opinion the introduction of Helene's statement through the testimony of her mother and the police officer was erroneous and are unable to say this did not cause the jury to find the defendant guilty.

The historic rule in Tennessee, for allowing a third person to testify as to a fresh complaint from the victim of a sexual attack, is to allow such testimony, as an exception to the hearsay rule, in corroboration of the victim's testimony. *Phillips v. State*, 28 Tenn. 246 (1848); *Klaver v. State*, 503 S.W.2d 946 (Tenn.Crim.App.1973). In *Phillips*, the basis for introduction of this type testimony was set out:

"[P]roof of the particulars of the complaint made by the injured party cannot be admitted as original evidence to prove the truth of the statements, or to establish the charge made against the prisoner, because not made in his presence, and, likewise, because the ordinary tests which the law has provided for the ascertainment of truth are wanting, viz., the sanction of a judicial oath, and the opportunity for cross-examination. . . . Such evidence is only admissible in confirmation of the witness, or to repel the presumption that her statement is a fabrication."

\*   \*   \*   \*   \*   \*

"[I]t is only in cases where the person injured is called and examined as a witness that evidence either of her complaint in general terms or of her detail of the circumstances and particulars of the transaction can be admitted." 28 Tenn. at 249, 250–251

Clearly the introduction of the child's complaint under the corroboration rule was erroneous.

The State contends this evidence should be admissible under the "fresh complaint rule," which allows admission of the complaint as original evidence even in the absence of the victim's testimony. This view has not been adopted in Tennessee and it is the State's insistence such should now be done.

From the examination of the treatment of this subject in 157 A.L.R. 1359; 75 C.J.S. § 53, p. 525; Wharton's Criminal Evidence, Vol. 2, § 313 (13th Ed. 1972); and various cases therein relied on, we find there is a split in authority on this proposition.

However, the prevailing view is that when the victim is incompetent because of age or other factors, a witness may testify that a complaint was made to the witness by the victim in crimes of this nature. However, the details of the complaint and declarations made by the victim are inadmissible. The witness may testify only that a complaint was made. Particulars of the complaint, especially those details incriminating the accused, are inadmissible.

■   We agree with the State that a witness who has received a fresh complaint from the victim in crimes of this nature should be allowed to testify such a complaint was made. However, we do not agree a witness should be allowed to give details of the complaint when the victim does not testify. Our proscription of the details especially excludes the identification of the accused by the victim.

The very facts of this case strongly militate against the State's contention that the adoption of what they describe as the "liberal and more modern rule" of the fresh complaint doctrine which allows the details of the complaint in evidence, or at least allows the identification of the defendant, rather than avoiding an injustice, has infinitely more potential for working an injustice.

The mother said the actions of the child caused her to believe something was wrong. The mother testified that she and the child had the following discussion:

"A. She told me that she went to the bathroom and that it hurt and she had been bleeding that day and she hurt when she sit down. So, I told her, I said, let's check and see what's wrong with

you. So, I had taken her to the bathroom and I put her across my lap, and I looked and I thought she was bleeding in front, and I looked and she said, "No, momma, not there, back here". So I looked back there and I had seen it was red and she had broken skin and it had traces of blood. I asked her what had happened to her. And she said, "I can't tell you, momma, because you will whoop me." And I said, "Baby, please tell me what's wrong. What happened to you?" She said, "I can't tell you." She started crying, you know. So, I begged her, "Please tell momma what happened. I'm not going to whoop you." So, she told me that while I was at work, that Junior [the defendant] had Andre to go up to the room and take a nap, close the door to take a nap, and told her to lay on the couch. While she laid on the couch, he put his thing in her behind and he hurt her. And she said, "Momma, I tried to get him off me, but he was too heavy. I couldn't get him off."

The evidence, part of which is set out above, shows the child was in the care or custody of the defendant until approximately 3:30, when the defendant went to work. The defendant rode to work with his uncle, and the Greer children went also. The defendant's aunt, who worked the day shift, rode back home with the children. During this time, the child did not exhibit any physical or emotional discomfort.

The child was in the care or custody of her stepfather from 4:30 p. m. until after 6:00 p. m., when her mother returned home from work.

A police officer testified he arrived at the Greer apartment at about 7:30 p. m. and talked with the child who, among other things, told him she wiped herself with a piece of tissue and got blood on it. The officer found this tissue and described the blood as being wet and fresh.

An expert witness, a forensic serologist, who examined the tissue, said, although without scientific certainty, she did not think it would take two or three hours for the blood on the tissue to dry.

What we have from the evidence is the undisputed fact the child was subject to anal rape. The defendant and the step-father were so situated either could be the perpetrator. A significant part of the evidence indicates the offense could have been committed after the babysitter relinquished the custody of the child. To allow into evidence the details of the child's recitation to the mother and police officer in the absence of the child's testimony violated the defendant's right to confrontation under the Sixth Amendment to the Constitution of the United States, and Article I, section 9 of the Constitution of Tennessee.

The State further insists that, should the evidence of the child's complaint not be admissible under the fresh complaint rule, we should allow this evidence as part of the res gestae or as an excited utterance. We do not eschew the application of either rule for admission of evidence of this nature where appropriate. However, in this case the statements of the child do not qualify under either theory.

The considerable time lapse between the time of the alleged events and the testimony of other witnesses who saw the child negates any idea of spontaneity from the occurrence or continued excitement until she complained to her mother, so that the element of trustworthiness from such stimulus is absent.

We note, additionally, the step-father was not called as a witness by either side nor was his absence on the witness stand explained.

For these reasons, we find the erroneous introduction of this evidence requires a reversal of this judgment. We do not hold the evidence was insufficient on which to convict so as to bar further prosecution of this case.

WALKER, P. J., and CORNELIUS, J., concur.