STATE of Iowa, Appellee,

v.

**Byron W. BROWN, Appellant.**

No. 68073.

Supreme Court of Iowa.

Nov. 23, 1983.

Charles L. Harrington, Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Teresa Baustian, Asst. Atty. Gen., and Patrick C. McCormick, County Atty., for appellee.

REYNOLDSON, Chief Justice.

The controlling issue in this case is whether trial court should have admitted into evidence a police officer's description of defendant's picture identification by a five-year-old sexual abuse victim who was unavailable as a witness. Defendant, appealing following his conviction of second-degree sexual abuse (a violation of Iowa Code sections 709.1(3) and 709.3(2)), asserts this was hearsay and reversible error. Agreeing, we reverse and remand for new trial.

There was adequate evidence to support the jury's verdict that defendant committed a sexual assault on the victim, a five-year-old neighbor boy. The trial was complicated by defendant's successful pretrial motion to exclude the victim's testimony on the ground the latter did not have sufficient age, maturity and mental capacity to understand the nature and obligations of an oath.

A police officer, however, was permitted to testify, over hearsay objection, that the victim had selected defendant out of a photographic array when asked "to point out an individual, if one did exist, of the individual that hurt him."

When questioned by an officer at the police station shortly after the incident, defendant made statements that placed the victim in defendant's apartment partially disrobed and crying. This officer testified defendant at three intervals also stated that "if he [the defendant] admitted to raping a child that he would be sent to the penitentiary." Defendant appeals on this issue, based on his hearsay objections and on trial court's refusal to grant his motion to suppress all of his statements to the police. Defendant's motion alleged the police failed to obtain a valid waiver of his *Miranda* rights, and to provide him with the support of a family member upon request. The motion further alleged defendant's statements were not voluntarily made, the latter contention apparently based upon his borderline mental retardation.

I. *Admission of Victim's Pretrial Identification of Defendant in Photographic Array.*

In compliance with the court's pretrial ruling, the victim was never called to the witness stand during the trial.

The victim's mother and a friend described the victim's return to their apartment, crying and bleeding from the rectum. His statements at that time, which confirmed the assault and its occurrence in defendant's apartment, were testified to by these witnesses over hearsay objections. No appeal has been taken from the admission of this evidence as an excited utterance.

The victim was then taken to the hospital for further examination. Meanwhile, defendant had consented to be taken to the police station for questioning. He also consented to his picture being taken. Pictures of other persons with similar features were selected, and an officer took all the photographs to the hospital for the victim's viewing. The victim was in a hospital bed. At that time, according to the officer, he was

"not crying or hysterical or anything" but was "calm." The officer laid six photographs on the child's hospital bed and asked the child "to point out an individual, if one did exist, of the individual that hurt [you]." Only then did the child select defendant's picture.

In resisting defendant's hearsay objection, the prosecution argued this evidence was admissible under the excited utterance exception to the hearsay rule, *see State v. Ogilvie*, 310 N.W.2d 192, 196 (Iowa 1981). The State now concedes in its appellate brief that this exception is inapplicable, and admitted in oral argument the spontaneity undergirding the excited utterance exception was lacking in the deliberate and considered reflection and judgment ordinarily required to select a specific face out of an array of look-alike pictures. *See State v. Stevens*, 289 N.W.2d 592, 596 (Iowa 1980) ("This [excited utterance] exception to the hearsay rule applies generally in criminal prosecutions when the statement is made under the influence of the excitement of the incident rather than on reflection or deliberation.").

 Although we have often allowed use of the "excited utterance" or "res gestae" hearsay exception despite the fact that the out-of-court declarant, like this victim, was responding to a question, the questions in those cases were "not calculated to elicit information which would otherwise have been withheld," *State v. Watson*, 242 N.W.2d 702, 704 (Iowa 1976). Furthermore, the declarants in those cases were not "calm" but upset. *See Ogilvie*, 310 N.W.2d at 196 (declarant sexual abuse victim "still upset"); *State v. Haines*, 259 N.W.2d 806, 810 (Iowa 1977) ("irrefutable evidence the child made the statements while in an excited state"); *Watson*, 242 N.W.2d at 704 (declarant rape victim described as "pretty well shook up"). *See also State v. Swanson*, 228 N.W.2d 101, 103 (Iowa 1975) (In

making identifying statement to police, declarant victim described as "emotional, upset, crying and sobbing, hysterical and very distraught."). Although we are sorely tempted to admit the victim's identification here under the "excited utterance" exception, the rule can only "support the admission of a hearsay statement by a child of tender years in a sexual assault case *if* the foundation criteria of the rule are met." *People v. Kreiner*, 415 Mich. 372, 379, 329 N.W.2d 716, 720 (1982). The State has conceded correctly that they are not present in this case.

The State now urges us to adopt the theory codified in Federal Rules of Evidence 803(24) and 804(b)(5), the residual or catchall exceptions to the hearsay rule. These rules, carrying the same numbers, are now incorporated in the Iowa Rules of Evidence, but had not been adopted at the time of defendant's trial. Both allow the court to admit hearsay if it is contained in

[a] statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.[1]

We note, initially, that this court previously has declined to apply a federal rule involving out-of-court identification to an Iowa criminal case, *see State v. Holmes*, 325 N.W.2d 114, 116 (Iowa 1982). One reason given in *Holmes* was that the rule in question had not "enjoyed consistent legislative support." *Id.*

The residual hearsay exceptions have a similarly checkered legislative history, and

---

1. The two rules differ only in that rule 803 exceptions can be used when the out-of-court declarant is available but does not testify, while rule 804 exceptions require the unavailability of the out-of-court declarant. Although the State relied on rule 804(b)(5), the non-testifying child did not meet the definition of "unavailable" set forth in rule 804(a).

although they have now been adopted in Iowa, it is important to note the Congressional admonition that:

It is intended that the residual hearsay exceptions will be used very rarely, and only in exceptional circumstances. The committee does not intend to establish a broad license for trial judges to admit hearsay statements that do not fall within one of the other exceptions contained in Rules 803 and 804(b). The residual exceptions are not meant to authorize major judicial revisions of the hearsay rule, including its present exceptions.

28 U.S.C.A. Rule 803, Historical Note at 583. *See also United States v. Cain,* 587 F.2d 678, 681 (5th Cir.1979); *United States v. Bailey,* 581 F.2d 341, 346 (3d Cir.1978). In fact, according to one commentator, the listing of specific exceptions which precedes rule 803(24) was prompted by fears that the open-ended approach would "unduly minimize the predictability of rulings at trial, increase the hazards of trial preparation and give too great a measure of discretion to the trial judge." 4 J. Weinstein & M. Berger, *Weinstein's Evidence* 803(24)[01] at 803–286 (1981).

■ However, even if we were to hold that the new Iowa rule was applicable to defendant's trial, the State's case would not be helped by that holding. Before hearsay evidence can be admitted pursuant to the rule, the trial court must determine that the conditions of the rule are met. This requires five specific findings by the trial judge (trustworthiness, materiality, necessity, notice, and service of the interests of justice). These findings "should be made explicitly on the record," 4 J. Weinstein, *supra,* at 803–290. Clearly, this was not done here, and the trial court's admission of the identification as an excited utterance will not substitute for the detailed weighing and balancing required to satisfy the residual exceptions' exacting specifications.

Furthermore, the "guarantees of trustworthiness" that foundation admission under the rule are lacking here. Although there is substantial authority for the proposition that children are by nature innocent and inherently trustworthy, almost all of these cases are based on the excited utterance exception. In the overwhelming majority of these cases, a distressed child has blurted out to his or her parent a garbled story of sexual abuse. The undoubted reliability of these statements comes not only from the child's evident distress but also from the childlike nature of the narrative, *see United States v. Nick,* 604 F.2d 1199, 1201 (9th Cir.1979) ("The child's terminology has the ring of verity and is entirely appropriate for a child of tender years."); *State v. Bloomstrom,* 12 Wash.App. 416, 419–20, 529 P.2d 1124, 1126 (1974) ("nature of the [child's] description tends to lend authenticity"), and the inability of a child to concoct a story based on the unknown world of sexual experience. *See People in Interest of O.E.P.,* 654 P.2d 312, 318 (Colo. 1982) ("A child ... is hardly adept at the type of reasoned reflection necessary to concoct a false story relating to a bizarre sexual experience."); *State v. Posten,* 302 N.W.2d 638, 640 (Minn.1981) (finding it "highly unlikely that a six year old would have the capacity to concoct a story like this"). As the court explained in *State v. Padilla,* 110 Wis.2d 414, 427, 329 N.W.2d 263, 270 (1982), "the young victim's account of the present sexual assault must be true because the victim can have no other source for the considerable knowledge of the details of sexual intercourse." The foreign acts, in effect, speak through the child victim because his or her knowledge of them suggests a previous firsthand experience with sex.

It is, in fact, exactly this rationale which permits the introduction of this victim's statements to his mother and her friend, placing the assault in defendant's apartment. However, the boy's later identification of the photograph contained no such indicia of reliability. In making it, he was not showing a forced awareness of a realm of experience ordinarily hidden from young children; he was merely responding with a single gesture to a very ordinary and narrowly focused question. Indeed, the identification, made at the behest of a foreign

authority figure and in response to a very specific question, partakes far more of the character of testimony at trial than it does of the character of an excited utterance. And, although a finding of incompetence to testify relates primarily to a potential witness's understanding of the oath, it also suggests a lack of either the maturity or the mental capacity required to answer questions truthfully. Where there is nothing else to indicate a propensity either for truth telling or for the truthfulness of a particular statement, that statement cannot be admitted.

There was, of course, no opportunity for defense counsel to question the victim's identification through cross-examination, although one commentator on the federal rules has stated that hearsay evidence should be allowed under rule 803(24) only if "the evidence is of a kind where cross-examination would not enhance reliability." 4 J. Weinstein, *supra,* at 804–122. The importance of cross-examination when dealing with identification testimony is underscored by Federal Rule of Evidence 801(d)(1)(c), now adopted in the Iowa Rules of Evidence and assigned the same number. This rule removes a statement of prior identification from the realm of hearsay altogether if "[t]he declarant testifies at the trial or hearing and *is subject to cross-examination* concerning the statement." (Emphasis added.)

Possibly following this rationale, several courts do allow the admission of out-of-court identifications when the out-of-court identifier testifies at trial and is available for cross-examination. *See People v. Gould,* 54 Cal.2d 621, 626, 354 P.2d 865, 867, 7 Cal.Rptr. 273, 275 (1960); *Rice v. United States,* 437 A.2d 582, 583 (D.C. 1981); *State v. Lasley,* 306 Minn. 224, 228, 236 N.W.2d 604, 607 (1975), *cert. denied,* 429 U.S. 1077, 97 S.Ct. 820, 50 L.Ed.2d 796 (1977); *Fells v. State,* 345 So.2d 618, 622 (Miss.1977). However, the overwhelming majority of jurisdictions do not admit out-of-court identifications when the declarant does not testify and is not available for cross-examination. *See People v. Howard,* 198 Colo. 317, 320, 599 P.2d 899, 901 (1979);

*Knight v. State,* 373 So.2d 52, 53 (Fla.Dist. Ct.App.1979), *cert. denied,* 385 So.2d 761 (Fla.1980); *People v. White,* 33 Ill.App.3d 523, 530, 338 N.E.2d 81, 87 (1975); *Preston v. Commonwealth,* 406 S.W.2d 398, 404 (Ky.1966), *cert. denied,* 386 U.S. 920, 87 S.Ct. 886, 17 L.Ed.2d 792 (1967); *State v. Arbuthnot,* 367 So.2d 296, 298 (La.1979); *State v. Williams,* 598 S.W.2d 830, 833 (Tenn.Crim.App.1980) (exclusion based on confrontation, not hearsay grounds). *But see State v. Simmons,* 52 N.J. 538, 247 A.2d 313 (1968), *cert. denied,* 395 U.S. 924, 89 S.Ct. 1779, 23 L.Ed.2d 241 (1969) (incompetent victim's out-of-court identification of defendant held reliable because of her extreme and spontaneous agitation during the showup). *See also* Annot., 71 A.L.R.2d 449, 482 (1960).

Because we believe that "the weight of authority and the best judicial reasoning requires the exclusion of such evidence," *People v. Howard,* 198 Colo. at 320, 599 P.2d at 902, we now hold that the residual hearsay exceptions ordinarily cannot be used to admit evidence of an out-of-court identification when the identifying declarant does not testify at trial and is not available for cross-examination. Thus, the evidence showing the victim's identification of the defendant should not have been admitted. Because we have decided that the identification is inadmissible hearsay, we need not reach the problem of defendant's sixth amendment right to confront the out-of-court witness against him, see *State v. Williams,* 598 S.W.2d at 833.

The admission of hearsay is presumed to be prejudicial error unless the contrary is affirmatively established. *State v. Webb,* 309 N.W.2d 404, 411 (Iowa 1981); *State v. Horn,* 282 N.W.2d 717, 724 (Iowa 1979). In *State v. Galvan,* 297 N.W.2d 344 (Iowa 1980), we approved the admission of one non-verbal communication by a two-year-old witness, but refused to find a second, less dramatic communication merely cumulative, or "to speculate on the likelihood that the jury would ignore the evidence," *id.* at 348. *See also People v.*

*Prophet,* 101 Mich.App. 618, 624, 300 N.W.2d 652, 655 (1980) (conviction reversed because of the extreme prejudice which attaches when the hearsay identification testimony is given by a policeman).

We, too, refuse to speculate on the effect of the officer's identification testimony. We therefore reverse defendant's conviction. We briefly treat the remaining issues to guide court and counsel in the new trial upon remand.

II. *Admissibility of Defendant's Statements to Police.*

■■■■ Defendant argues his statements to the police should have been suppressed on *Miranda* and general voluntariness grounds, as well as under the exclusionary rule announced by this court in *State v. McAteer,* 290 N.W.2d 924 (Iowa 1980) (telephone call to family and lawyer). *Miranda,* however, applies only when a defendant is in custody. *Oregon v. Mathiason,* 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714, 719 (1977); *Miranda v. Arizona,* 384 U.S. 436, 445, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706 (1966); *State v. Cook,* 330 N.W.2d 306, 311–13 (Iowa 1983); *Bizzett v. Brewer,* 262 N.W.2d 273, 277–78 (Iowa 1978). On the record before us, we find defendant was not in custody when his interrogation occurred. He accompanied officers to the police station voluntarily and was at no time subjected to either physical or verbal restraint. He was left entirely alone at various points during his interview, and he believed, correctly, that he was free to leave whenever he chose. Because the police did not so restrict defendant's freedom as to render him in custody, neither *Miranda* warnings nor the procedures outlined in *McAteer* were required.

■■■■ Defendant's statements to the police therefore were admissible as long as they were voluntarily made. After reviewing the totality of the circumstances as we are constitutionally required to do, *see*

*State v. Whitsel,* 339 N.W.2d 149, 153 (Iowa 1983); *State v. Hodges,* 326 N.W.2d 345, 347 (Iowa 1982), we find that the State has met its burden of proof on this issue. Although defendant is mentally deficient, this mental subnormality is not, by itself, enough to render him incapable of making a voluntary statement. *See State v. Snethen,* 245 N.W.2d 308, 315 (Iowa 1976); *State v. Connor,* 241 N.W.2d 447, 454 (Iowa 1976); *State v. Winfrey,* 221 N.W.2d 269, 273 (Iowa 1974); *State v. Fetters,* 202 N.W.2d 84, 88–90 (Iowa 1972). Defendant was questioned on an intermittent basis for two and one-half hours. The questioning took place during normal waking hours, and was done in a part of the police station with which the defendant was familiar. Only one officer confronted defendant, and that officer took pains to advise him of his constitutional rights. Finally, defendant convincingly demonstrated his understanding of the police proceedings and his willingness to participate in them during his suppression hearing and trial. There was no error in the admission of his statement to the police.

Defendant asserts it was reversible error for the court to permit the police officer's testimony that defendant repeatedly stated "if he [defendant] admitted to raping a child that he would be sent to the penitentiary." Defendant variously objected to the question on the ground the answer (which was before the court through an in-chambers offer) would be hearsay, and not an admission, and its probative value would be outweighed by its prejudice to the defendant. In his appellate brief defendant contends that only a speculative inference would support the testimony as an admission [2] and that any probative value of his statements was outweighed by the resulting prejudice.

■■■■ Our rule is that evidence that has a minimum of probative quality but is highly prejudicial generally must be exclud-

---

2. As a matter of interest see new Iowa Rule of Evidence 801(d):

Statements which are not hearsay. A statement is not hearsay if:

. . . .

(2) Admission by party-opponent. The statement is offered against a party and is (A) his own statement. . . .

ed. *State v. Wallace,* 259 Iowa 765, 770, 145 N.W.2d 615, 619 (1966). Balancing this equation is primarily for the trial judge, who may receive the evidence if it affords a basis for a reasonable inference on a point in issue. *Id., see State v. Hickman,* 337 N.W.2d 512, 515–16 (Iowa 1983); *State v. Fuhrmann,* 257 N.W.2d 619, 624–25 (Iowa 1977).

In this case defendant's responses to the officer's questioning placed the victim in his apartment, partially disrobed and crying. The obvious defense contention was that nonetheless the police were unable to obtain a confession of the assault. Further, the defense was contending defendant's statements were involuntary.

▮▮ It is obvious the statements reflected defendant's awareness of his situation and the consequences of any statements made by him. In addition, it bore upon defendant's state of mind, knowledge and motivation in his denial of sexual contact. We hold trial court rightly could have concluded the obvious relevancy of this testimony prevailed over considerations of its prejudicial impact. As throwing some light on this issue, see *State v. Odem,* 322 N.W.2d 43, 47 (Iowa 1982); *State v. Williams,* 256 N.W.2d 207, 208 (Iowa 1977); *State v. McDonald,* 190 N.W.2d 402, 405 (Iowa 1971); *State v. Olson,* 260 Iowa 311, 318–19, 149 N.W.2d 132, 136 (1967); 29 Am.Jur.2d *Evidence* §§ 601, 611, 646, 650 (1967).

We find no error in these rulings.

For the reasons provided in division I, however, we reverse and remand for new trial.

REVERSED AND REMANDED.

All Justices concur except McGIVERIN and LARSON, JJ., who dissent and WOLLE, J., who takes no part.

McGIVERIN, Justice (dissenting).

I respectfully dissent from division I and the result of the majority opinion. I would affirm the conviction.

I. Contrary to the foreign authorities cited and the holding in division I, we have previously followed the approach taken by the majority of courts that "although a child is incompetent to testify, testimony as to his or her spontaneous declarations or res gestae statement is nevertheless admissible." Annot., 15 A.L.R.4th 1043, 1047 (1982).

In *State v. Galvan,* 297 N.W.2d 344, 347 (Iowa 1980), we said:

> [T]he question [of admissibility of hearsay testimony] is not controlled by the fact that the witness's daughter was undoubtedly not competent to take an oath as a witness. The authorities make it clear that admissibility in such cases does not turn on the competence of the child to take the oath, but on the spontaneity of the utterance or act described.

In *State v. Haines,* 259 N.W.2d 806, 810 (Iowa 1977), in response to defendant's questioning the admissibility of hearsay testimony on the grounds that the out-of-court statements were made by a two and one-half year old child who did not testify and was not found by the trial court to be competent to testify, we said:

> [N]ormally the competency of the declarant is not a factor in determining whether hearsay testimony comes under the res gestae exception. We adhere to the view that even though the declarant was a very young child, the trial court was not required to make further inquiry as to the admissibility of the hearsay testimony. Other courts have allowed out-of-court declarations of young children to come into the record under the res gestae doctrine without meeting any further requirements.

(Citations omitted.)

I agree with the astute observation made by the court in *United States v. Nick,* 604 F.2d 1199, 1202 (9th Cir.1979), where it said in response to the defendant's contention that the admission of a witness's hearsay testimony, concerning the out-of-court statements made by a child who was not subject to cross-examination because

deemed to be an incompetent witness, was in violation of the Confrontation Clause:

> If the sole method by which the confrontation clause could be satisfied was the opportunity to cross-examine the declarant in court either at the time the statement was made or at the time the statement was offered, the infant's statement could never be received in evidence.

Therefore, I would not exclude the out-of-court identification of the defendant by the five-year-old victim just because the victim was precluded by court ruling from testifying.

II. I also believe the evidence of the out-of-court photo array identification of the defendant by the five-year-old victim was properly admissible within the trial court's discretion as an "excited utterance" exception to the hearsay rule. *See State v. Ogilvie*, 310 N.W.2d 192, 196 (Iowa 1981) (adopted "excited utterance" exception to hearsay rule as defined by Fed.R.Evid. 803(2) and rejected the use of "res gestae" terminology when used to describe a situation which comes within the excited utterance exception); Iowa R.Evid. 803(2) (adopted Fed.R.Evid. 803(2) to be effective July 1, 1983).

The "excited utterance" exception is defined to mean: "A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." *Ogilvie*, 310 N.W.2d at 196; *see* Iowa R.Evid. 803(2). The trial court has discretion to determine whether a statement is induced by stress of excitement caused by the startling event or condition. *Id.*

A comprehensive analysis of the standards to be applied in determining whether statements made by a child sexual abuse victim are within the excited utterance exception is provided in *United States v. Iron Shell*, 633 F.2d 77, 85–86 (8th Cir.1980), *cert. denied*, 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981), wherein the court stated:

> The lapse of time between the startling event and the out-of-court statement although relevant is not dispositive in the application of [the excited utterance exception]. Nor is it controlling that [the child's] statement was made in response to an inquiry. Rather, these are factors which the trial court must weigh in determining whether the offered testimony is within the [excited utterance] exception. Other factors to consider include the age of the declarant, the physical and mental condition of the declarant, the characteristics of the event and the subject matter of the statements. In order to find that [the excited utterance exception] applies, it must appear that the *declarant's condition at the time was such that the statement was spontaneous, excited or impulsive rather than the product of reflection and deliberation*.... We note at this point that our role is somewhat limited. We are not to substitute our judgment for that of the district court. We are only to reverse where we find that the admission of this testimony constituted an abuse of discretion.

(Citations omitted.)

The events in *Iron Shell* centered around the sexual assault of a nine-year-old girl. Shortly after the assault took place, a time approximated to be somewhere between forty-five minutes and one hour, fifteen minutes, the child was asked a single question by a law enforcement officer: "What happened?" In response, the child made statements concerning the actions of the defendant that were subsequently recounted at trial by the officer. The officer also testified that the child was not hysterical and was not crying during the time when her statements were made. The court held, based on the above standards, that the district court did not abuse its discretion in admitting the officer's testimony concerning the child's out-of-court statements even though there was testimony that "the declarant was calm and unexcited." The court stated in summary:

> We find that in these circumstances considering the surprise of the assault, its shocking nature and the age of the declarant, it was not an abuse of discretion

for the trial court to find that [the child] was still under the stress of the attack when she spoke to [the officer]. It was not unreasonable, in this case, to find that [the child] was in a state of continuous excitement from the time of the assault.

*Id.* at 86.

Other courts have been willing to give a broad and liberal interpretation to the "excited utterance" exception when dealing with statements made by young children. *See State v. Padilla,* 110 Wis.2d 414, 419, 329 N.W.2d 263, 266 (Wis.Ct.App.1982). The court in *Padilla* based its support of a liberal "excited utterance" exception for statements made by young children on the following observations:

In this special circumstance, the court has held that stress is present even some time after the triggering event. This ascertainment of prolonged stress is born of three observations. First, a child is apt to repress the incident. Second, it is often unlikely that a child will report this kind of highly stressful incident to anyone but the mother. Third, the characteristics of young children work to produce declarations "free of conscious fabrication" for a longer period after the incident than with adults. It is unlikely a young child will review the incident and calculate the effect of the statement.

*Id.* (Citations omitted.)

Relying on this liberal standard, Wisconsin cases have held out-of-court statements made by child sexual abuse victims to be admissible even though the statements have not been made immediately following the incident. The court in *Padilla* held that the passage of a three-day period between the alleged assault and the ten-year-old's reporting of the incident to her mother did not take her statements out of the excited utterance exception to the hearsay rule because "[i]n the case of young assault victims, the spontaneity is observed to occur at longer time periods from the event than is normally the case with adults." *See also State ex rel. Harris v. Schmidt,* 69 Wis.2d 668, 230 N.W.2d 890

(1975); *Love v. State,* 64 Wis.2d 432, 219 N.W.2d 294 (1974); *Bertrang v. State,* 50 Wis.2d 702, 184 N.W.2d 867 (1971).

There exists case authority from this court that supports applying a more liberal interpretation of the excited utterance exception to statements made by young children who are victims of sexual assault. In *State v. Galvan,* 297 N.W.2d at 347, we found no abuse of trial court's discretion in admitting the hearsay testimony of a witness concerning the unique behavior of her two-year-old daughter which she had observed two days after the date of the event in question. We said:

[The child's behavior] appears in every way to have been spontaneous and unsolicited. The passage of *two days,* especially for so young a child, *leaves it close enough to the transaction* so that a trial court could have believed any presumption of fabrication was excluded.

*Id.* (Emphasis added.)

Additional authority in support of bringing the child's out-of-court identification within the "excited utterance" exception may be found in *United States v. Nick,* 604 F.2d at 1202. In *Nick,* a three-year-old boy was sexually assaulted by his babysitter. When the mother arrived to pick up the boy, he was *asleep* with his pants unzipped. After bringing the child home, the mother observed what appeared to be semen on the child's clothing. She then asked the child if the babysitter had done anything to him. The child responded that "[the babysitter] stuck his tutu in my butt." The child also stated that the babysitter had hurt him and made him cry. The court upheld the district court's admission of the mother's testimony concerning the out-of-court statements made by the child over the hearsay objection entered by the defendant on the grounds that such statements were within the excited utterance exception to the hearsay rule in Rule 803(2) of the Federal Rules of Evidence. The court found that the record amply sustained the district court's conclusion that the child was "suffering distress from the assault when he told his mother what happened and identified [the

babysitter] as the perpetrator of the offense." *Id.* at 1202. *See also In the Interest of O.E.P.,* 654 P.2d 312 (Colo.1982) (statements made by four-year-old to foster mother and social worker concerning sexual abuse by her mother were admissible as an excited utterance exception even though made the day following the alleged sexual abuse); *People v. Woodward,* 21 Mich.App. 549, 175 N.W.2d 842 (1970) (six-year-old sodomy victim's statements made in a hospital shortly after the attack and in response to policewoman's questions were admissible because they were deemed to be within the res gestae of the offense); *State v. Roy,* 214 Neb. 204, 333 N.W.2d 398 (1983) (two-year-old sexual abuse victim's answer of "daddy" made in response to emergency room nurse's question: "Who hurt you?", was admissible as an excited utterance exception); *State v. Simmons,* 52 N.J. 538, 247 A.2d 313 (1968) (police officer's testimony concerning an incompetent witness's extra-judicial identification, made from her hospital bed, was not inadmissible hearsay), *cert. denied,* 395 U.S. 924, 89 S.Ct. 1779, 23 L.Ed.2d 241 (1969); *Johnston v. Ohls,* 76 Wash.2d 398, 457 P.2d 194 (1969) (police officer's testimony concerning an extra-judicial statement made by a four-year-old child—who was "presumably not competent to testify"—from her hospital bed in the emergency room, was not inadmissible hearsay because the declaration came within the res gestae exception to the hearsay rule); *State v. Bloomstrom,* 12 Wash.App. 416, 529 P.2d 1124 (1974) (statements made by an eight-year-old sexual abuse victim to her mother shortly after having been brought home by the defendant were deemed admissible as an excited utterance exception). *See generally* Annot., 89 A.L.R.3d 102 (1979).

Relying on these authorities, I fail to discern how the trial court's admission of the hearsay testimony concerning the child's out-of-court identification of the defendant can be viewed as an abuse of its discretion. The identification was made by the child victim in the hospital only a short time after the attack had occurred. It is self evident that the physical and emotional state of the child was not the best or he would not have been placed in the hospital after the attack upon him. If the passage of two days is "close enough to the transaction so that the trial court could have believed any presumption of fabrication was excluded," *State v. Galvan,* 297 N.W.2d at 347, and if a child's statements made in response to his mother's questioning, and made after being awakened from sleeping, are deemed to be "excited utterances," *United States v. Nick,* 604 F.2d at 1202, then, *a fortiori,* the child victim's identification in this case, made a short time following the attack while in the hospital, should be permitted to come within the "excited utterance" exception to the hearsay rule.

III. I believe the State concedes too much in agreeing, on appeal, that the out-of-court identification evidence was not an "excited utterance." The trial court determined that it was within the excited utterance exception, and I agree.

In *Newmire v. Maxwell,* 161 N.W.2d 74, 80 (Iowa 1968), we stated:

We are firmly committed to the rule that ... we must affirm the trial court if any sufficient basis appears therefor in the record, even though the ruling was placed upon a different ground. In the ordinary appeal the burden rests upon the appellant to demonstrate error and this is not done if the record shows proper support for the ruling complained of.

Where a learned judge's decision is right for the wrong reason it is nevertheless right.

*The rules just stated apply even though the party who was successful in the trial court does not seek to uphold the ruling on the ground suggested.*

(Citations omitted.) (Emphasis added.) *See also Oxley v. Oxley,* 262 N.W.2d 144, 151 (Iowa 1978).

It is only logical to reason that if we would uphold a ruling of a trial court for a reason other than the one relied on by the trial court, we should be able to affirm the ruling *for the same reason relied on by*

*the trial court* even though the appellee no longer relies on the trial court's reasoning. I do not believe we are precluded from considering the validity of the trial court's ruling, and its basis therefore, just because the appellee abandons it on appeal.

Because the trial court was correct in allowing the identification evidence, I would affirm.

LARSON, Justice (dissenting).

The officer's testimony of the boy's photo identification, though hearsay, was properly admitted.

Regardless of whether the trial court and the dissent of Justice McGiverin are correct in their conclusion that the identification qualifies for the "excited utterance" exception to the hearsay rule under Iowa Rule of Evidence 803(2), it was admissible under the "residual" exception of Iowa Rule of Evidence 804(b)(5). There is no error when evidence was properly admitted even though on grounds different from those cited by the trial court. We may affirm the trial court without accepting its reasoning. *State v. Belieu,* 314 N.W.2d 382, 384 (Iowa 1982).

Although Iowa's evidence code, patterned after the federal rules, was not yet in effect at the time of trial, we have often looked to the Federal Rules of Evidence in shaping Iowa's common law of evidence. *See, e.g., Kyle v. State,* 322 N.W.2d 299, 306 (Iowa 1982) (rule 801(d)(2)); *State v. Hall,* 297 N.W.2d 80, 91 (Iowa 1980) (rule 608); *State v. Savage,* 288 N.W.2d 502, 505 (Iowa 1980) (rule 701); *State v. Flesher,* 286 N.W.2d 215, 216 (Iowa 1979) (rule 801); *State v. Howard,* 284 N.W.2d 201, 203 (Iowa 1979) (rule 201(c)); *State v. Harmon,* 238 N.W.2d 139, 144 (Iowa 1976) (rule 403).

The Iowa and Federal Rules of Evidence 804(b)(5) are identical:

(5) *Other Exceptions.* A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules in the interest of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to the offer the statement and the particulars of it, including the name and address of the declarant.

I would hold that the boy was unavailable for hearsay purposes because of the court's order excluding his testimony. Iowa R.Evid. 804(a)(5) ("absent from the trial ... and the proponent of his statement has been unable to procure his attendance by process or other reasonable means."). This point is not critical here because the "residual" hearsay exceptions are identical in both "available" and "unavailable" settings, Iowa Rules of Evidence 803(24) and 804(b)(5).

Our review is not de novo. "The trial court's determination of admissibility of evidence under rule 803(24) [identical to 804(b)(5)] will not be overturned on appeal except for an abuse of discretion. (Citation omitted)." *U.S. v. Friedman,* 593 F.2d 109, 118 (9th Cir.1979). *U.S. v. Bailey,* 581 F.2d 341, 346 (3rd Cir.1978) ("trial court is vested with discretion").

I believe the conditions for admission under the rule are satisfied here. There can be no question that the officer's statement regarding the photo identification was offered as evidence of a material fact. The "notice" requirement of the rule may also be deemed satisfied because the defense was aware of the identification and its significance far in advance of the trial, through minutes of testimony filed with the county attorney's information. *See United States v. Carlson,* 547 F.2d 1346,

1355 (8th Cir.1976), *cert. denied,* 431 U.S. 914, 97 S.Ct. 2174, 53 L.Ed.2d 224 (1977).

By examining the adequacy of the notice and the time allowed to prepare to meet a statement offered pursuant to these rules [803(24) and 804(b)(5)], a reviewing court may determine whether the adverse party has had "a fair opportunity to prepare to contest the use of the statement." H.Conf.Rep. No. 1597, 93rd Cong., Second Sess. (1974) reprinted in [1974] U.S.Code Cong. & Admin.News at 7106.

*U.S. v. Bailey,* 581 F.2d at 348.

The other conditions of rule 804(b)(5) are also met, as follows:

A. *"[E]quivalent circumstantial guarantees of trustworthiness."*

Because a determination of the "trustworthiness" of hearsay usually depends heavily on the characteristics and demeanor of witnesses and on the interplay of events, people, and perceptions, the trial court's findings must be given some deference. *Carlson,* 547 F.2d at 1354 (under rule 804(b)(5), trial court has "wide latitude of discretion in determining the trustworthiness of the statement"). The trial court here, albeit for "excited utterance" reasons, found the identification trustworthy and reliable.

There appears to be no fairness question in the photo array or identification procedure. The boy quickly and positively identified the defendant.

Persuasively, there is corroborative evidence which supports the photo identification. Many courts have held that corroborating circumstances may supply the element of trustworthiness. *See, e.g., U.S. v. Ward,* 552 F.2d 1080 (5th Cir.), *cert. denied,* 434 U.S. 850, 98 S.Ct. 161, 54 L.Ed.2d 119 (1977); *U.S. v. Garner,* 574 F.2d 1141, 1144–46 (4th Cir.), *cert. denied,* 439 U.S. 936, 99 S.Ct. 333, 58 L.Ed.2d 333 (1978); *U.S. v. West,* 574 F.2d 1131, 1135 (4th Cir. 1978); *Hopkinson v. State,* 632 P.2d 79, 131–32 (Wyo.1981), *cert. denied,* 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 463 (1982). The boy's "excited utterances" (ones not challenged on appeal) pointed directly to the defendant ("the guy on the corner in Judy's apartment beat him" and "the man in Judy's apartment was the one," as related by the boy's mother, and the boy's pointing to defendant's apartment door in response to an officer's question of where the boy had been hurt). The boy's injuries also corroborated his version of events. Further, the defendant's own admission placed the boy in his apartment that day, with his pants down.

*Bailey* points out that corroboration alone should not be determinative, because to the extent there is corroboration, there is a reduced need for admission. "Rather, the trustworthiness of a statement should be analyzed by evaluating not only the facts corroborating the veracity of the statement, but also the circumstances in which the declarant made the statement and the incentive he had to speak truthfully or falsely." 581 F.2d at 349. And, *see Hopkinson,* 632 P.2d at 131–32 (trustworthiness "may be established either through other corroborating evidence or by considering the motivation and/or behavior pattern of the declarant. (Citation omitted).")

Here, those circumstances and incentives indicate reliability. There appears to be no reason to believe the boy did not have the innocence and absence of guile or bad motive typical of five-year-olds. *Roberts v. Hollocher,* 664 F.2d 200, 204–05 (8th Cir. 1981) (child's age a factor supporting admissibility and assuring trustworthiness); *People in Interest of O.E.P.,* Colo., 654 P.2d 312, 318 (1982) ("a child of three years is hardly adept at the type of reasoned reflection necessary to concoct a false story relating to a bizarre sexual experience implicating the child's mother."); *State v. Posten,* 302 N.W.2d 638, 641 (Minn.1981) (mother of six-year-old sex abuse victim allowed to testify to her daughter's nightmares, in which she fought and scratched and said "Ray, stop. Stop it, Ray. Stop it. Stop it."); *State v. Roy,* 214 Neb. 204, ——, 333 N.W.2d 398, 401 (1983) ("tender age" of two-year-old sex abuse victim an indicia of reliability); *State v. Doe,* 94 N.M. 637,

638, 614 P.2d 1086 (1980) (statement related by four-year-old sex abuse victim admitted); *State v. Padilla,* 110 Wis.2d 414, 419, 329 N.W.2d 263, 266 (1982) ("the characteristics of young children work to produce declarations 'free of conscious fabrication' for a longer period after the incident than with adults"). *See also, State v. Bloomstrom,* 12 Wash.App. 416, 419, 529 P.2d 1124, 1126 (1974); *Haley v. State,* 157 Tex. Cr.App. 150, 153–54, 247 S.W.2d 400, 402 (1952).

Also, wholly apart from whether the identification was an "excited utterance," the facts and rationale which support that claim here are significant, as Justice McGiverin details, and act as guarantors of trustworthiness.

The majority asserts that the boy may have only picked the photograph of the person he recognized. But he was not just shown pictures and told to pick; he was asked to choose the one, if any, who had hurt him. There is no evidence that the boy did otherwise, and the circumstances do not indicate a significant danger of mistake or subterfuge. *See State v. Simmons,* 98 N.J.Super. 430, 437–40, 237 A.2d 630, 633–34 (1968), *aff'd,* 52 N.J. 538, 247 A.2d 313, *cert. denied,* 395 U.S. 924, 89 S.Ct. 1779, 23 L.Ed.2d 241 (1969). The boy was relating information of which he had first-hand knowledge, and he told about the experience shortly after it occurred. Infirmities such as reliance on potentially erroneous secondary information and faulty recollection were thus nonexistent. Nor is there any evidence of later equivocation. Further, the officer, mother, mother's friend, and two nurses were available to assist the jury concerning the circumstances under which the statement was made. Indeed, because the boy knew the defendant, the risks often inherent in an identification were not present here.

Certainly, the jury may weigh this evidence, taking the boy's age into account; but I cannot find, as does the majority, the identification without sufficient "guarantees of trustworthiness." Put another way, the hearsay dangers—ambiguity, lack of candor, faulty memory, and misperception—are minimal here. 4 Louisell and Mueller, *Federal Evidence,* § 413, pp. 69–70 (1980).

The majority finds the trial court's ruling on competency determinative of "trustworthiness." But there is a significant difference between deciding whether a child of five can appropriately understand and respond to the pressures of an adversary courtroom on the one hand, and on the other, whether the hospital identification was reliable. *Simmons,* 98 N.J.Super. at 437, 237 A.2d at 633 ("The mere fact that the trial judge found this deaf-mute, possessed of the intelligence of a seven-year-old first-grader incompetent *to testify* because of her inability to express herself as to abstract ideas, does not preclude her pointing an accusatory finger."); *Doe,* 94 N.M. at 639, 614 P.2d at 1088 (four-year-old sex abuse victim ruled incompetent but his hearsay identification admitted); *Bloomstrom,* 12 Wash.App. at 418–19, 529 P.2d at 1126 ("we agree that if the elements of the excited utterance exception to the hearsay rule are present, the hearsay testimony of the [eight-year-old] child is admissible whether or not the child is competent as a witness. (Citations omitted)."). *Accord Haley,* 157 Tex.Cr.App. at 153, 247 S.W.2d at 402. The district court here ruled the child incompetent because he "does not at present have sufficient age, maturity, and mental capacity to understand the nature and obligations of an oath; and that placing him on the witness stand would unnecessarily create an atmosphere unduly prejudicial to the defendant." The latter reason has nothing to do with the identification itself and the former goes to the child's ability to appreciate the gravity of the oath, not to the reliability of the identification in the circumstances under which it was made. Division I of Justice McGiverin's dissent in this case is also persuasive on this point, and I join it.

The majority is also concerned that the defendant was not afforded a traditional guarantor of trustworthiness, cross-examination. *See Bailey,* 581 F.2d at 350–51.

But, as the United States Supreme Court has stated,

> While it may readily be conceded that hearsay rules and the Confrontation Clause are generally designed to protect similar values, it is quite a different thing to suggest that the overlap is complete and that the Confrontation Clause is nothing more or less than a codification of the rules of hearsay and their exceptions as they existed historically at common law.

*California v. Green,* 399 U.S. 149, 154, 90 S.Ct. 1930, 1932, 26 L.Ed.2d 489, 495 (1970).

In evaluating the necessity for cross-examination in the hearsay context, the court has looked to "indicia of reliability which have been widely viewed as determinative of whether a statement may be placed before the jury though there is no confrontation of the declarant." *Dutton v. Evans,* 400 U.S. 74, 89, 91 S.Ct. 210, 220, 27 L.Ed.2d 213, 227 (1970). As outlined above, the indicia of reliability (trustworthiness) in this case permit "a satisfactory basis for evaluating the truth of the prior statement" *Green,* 399 U.S. at 161, 90 S.Ct. at 1936, 26 L.Ed.2d at 499, and therefore admission. *West,* 574 F.2d at 1137–38. Also, those present at the identification, including the police officer, mother, mother's friend, and two nurses were available for cross-examination regarding the circumstances of the statements. And to the extent defendant argued the boy was incompetent to testify, he also argued against the reliability enhancing function of cross-examination in this case.

Under these circumstances, I would find "equivalent circumstantial guarantees of trustworthiness" and no sixth amendment confrontation violation.

B. *"[S]tatement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts."*

Because there were apparently no eyewitnesses to the boy's injuries and no direct physical evidence linking the injury to a particular person, the boy's identification of the perpetrator is the most probative evidence linking defendant to the crime. With the boy's testimony excluded, however, the State's reasonable efforts could yield no evidence better than the hearsay relating the boy's identification of defendant, including statements made before he was taken to the hospital and the hospital photo identification. That photo identification provided the strongest possible evidence linking defendant to the boy's injuries.

C. *"[G]eneral purposes of these rules and the interests of justice will best be served by admission of the statement into evidence."*

This requirement "is simply a further emphasis upon the showing of necessity and reliability and a caution that the hearsay rule should not be lightly disregarded, and the admission should be reconciled with the philosophy expressed in rule 102. (Citation omitted)." *Friedman,* 593 F.2d at 1119. Federal and Iowa Rule of Evidence 102 identically provide:

> These rules shall be construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined.

I am satisfied here with the reliability of the statements, the showing of necessity, and with the consistency of admission with the policy of the rules. Moreover, where there are circumstantial guarantees of trustworthiness and necessity, it would be "antithetical to the truth-seeking function of our judicial system and would not serve the interests of justice" to deprive the jury of the victim's identification of his attacker. *Carlson,* 547 F.2d at 1355.

In a case mirroring the facts here, the Ninth Circuit (in a confrontation clause challenge) used the criteria of rules 803(24) and 804(b)(5) to weigh the reliability of a child's out-of-court identification under the "excited utterance" exception. *U.S. v. Nick,* 604 F.2d 1199 (9th Cir.1979) (per cu-

riam). The relevant facts were stated as follows:

> The assault occurred when [defendant] Nick was babysitting the child. The child's mother had known Nick for many years and the child was well acquainted with Nick. When the child's mother picked up the youngster, the child was asleep with Nick in a locked bedroom. The child's pants were unzipped. After she brought the child home, she observed "white stuff" in the youngster's clothing. The mother asked the child whether Nick had done anything to him, and the child responded, "yea, Eneas [Nick] stuck his tutu in my butt." The child also stated that Nick had hurt him and made him cry.

*Nick*, 604 F.2d at 1201.

The court's reasoning parallels my own in this dissent:

> We now apply these [rule 804(B)(5)] criteria to decide whether, under all of the circumstances, the child's declaration to his mother had significant guarantees of trustworthiness. The child's statement was directly responsive to his mother's question about the soiled condition of his apparel and his upset condition. The statement was made while the child was still suffering pain and distress from the assault. The child's terminology has the ring of verity and is entirely appropriate to a child of his tender years. The child's statement was corroborated by physical evidence on his person and on his apparel. It is extremely unlikely that the statement under these circumstances was fabricated. The statement was unquestionably material, and it was more probative as to the identity of the assailant than any other evidence, except Nick's confession. The declaration to his mother at the time of the event was more rather than less probative than testimony that he might have been able to give months after the event even if the district court would have found him competent. (Federal Rule of Evidence, rule 601.) The interests of justice were served by admitting the declaration of this child, who was the victim of a sexual

assault, and far too young to appreciate the implications of that assault.

> Finally, that portion of the statement identifying Nick as the assailant is inherently trustworthy under all of the circumstances of this case. Extrinsic evidence established that Nick had the opportunity to commit the crime. The child new Nick well, and he was not likely to mistake his assailant. The mother was not likely to have had any faulty recollection of the child's simple, shocking seven-word statement. Moreover, she herself was subject to rigorous cross-examination on that score. (Footnote omitted).

*Nick*, 604 F.2d at 1204. In the present case, the circumstances surrounding the victim's statement were similar to those in *Nick*, which lends further support for the trial court's ruling.

I would affirm.