# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 47693-2-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| PAUL ALAN GILMORE, | |
| Appellant. | |

MAXA A.C.J. – Paul Gilmore appeals his convictions for first degree child molestation and communicating with a minor for immoral purposes relating to his stepdaughter MB, and his convictions for four counts of viewing depictions of minors engaged in sexually explicit conduct relating to viewing pornographic websites involving children.  Gilmore also challenges the trial court's imposition of a discretionary legal financial obligation (LFO) as part of his sentence.

We hold that (1) there was sufficient evidence to convict Gilmore of four counts of viewing depictions of minors engaged in sexually explicit conduct, (2) Gilmore's defense counsel did not provide ineffective representation by failing to object to certain testimony and arguments, (3) we decline to consider Gilmore's argument that the trial court erred in ruling that

he could not wear his United States Navy uniform at trial because he did not object to that ruling at trial, (4) Gilmore's myriad statement of additional grounds (SAG) claims either cannot be considered or have no merit, and (5) the trial court did not err in imposing a discretionary LFO as part of Gilmore's sentence. Accordingly, we affirm Gilmore's convictions and the trial court's imposition of a discretionary LFO.

FACTS

Gilmore worked in the Navy as a machinist. He married Candice[1] in 2009. They lived in Bremerton with their children MB and CG. MB was Candice's daughter from a previous relationship and was born in July 2006. Although Gilmore was not MB's biological father, he had known her since she was a baby and she thought of him as her father.

*MB's Description of Abuse*

In October 2014, Candice's mother Kathleen became concerned because MB had suggested to Candice's father that she had a secret she wanted to share. MB was eight years old at the time. Kathleen drove from Oregon to visit MB, and on that visit MB told her, "My daddy has me touch him when he's naked and we share a computer -- Daddy's little girl and something about a [sex act]." 2 Report of Proceedings (RP) at 220.

The next day Kathleen told Candice what MB had said. When MB arrived home from school, Kathleen asked MB to show Candice what she had been talking about the night before. MB took Gilmore's laptop computer, opened it, typed in the password, opened the web browser, and started typing into the search bar. MB typed "D" and "A" and the search engine

---

[1] We use the first names of MB's mother and grandmother to avoid confusion. No disrespect is intended.

automatically generated a result – a video with "Daddy's" in the title. 2 RP at 247. The still image showed a naked, young-looking girl. Candice shut the computer and did not click on the video. Kathleen later reported to the police what MB had said.

On November 19, child forensic interviewer Alexandra Mangahas interviewed MB. During the interview MB told Mangahas that Gilmore had done a web search for "daddy's little girl" performing a sex act and then showed her the resulting pictures and videos. Clerk's Papers (CP) at 266, 270. MB said that the pictures and videos showed grown-ups and children who were not wearing clothing.

MB described what she saw on Gilmore's computer. MB saw videos of "[m]oms, dads, and children" with "privates going into bodies." CP at 310-11. She said she saw privates go into grown-ups' and kids' mouths. She indicated that privates also went into the place where you go pee. She said that Gilmore told her to keep it a secret or else he and her mom would be divorced.

MB also wrote down what Gilmore did to her. She wrote "he does putting his finger on my private part." CP at 296. She said that Gilmore "sometimes strips me" and that it felt "weird" when he put his finger on her private part. CP at 298. MB also said that Gilmore touched her private part with his private part sometimes and that felt weirder.

*Law Enforcement Investigation*

Detectives Aaron Baker and Lori Blankenship questioned Gilmore. Before asking any questions, Baker read Gilmore his *Miranda*[2] rights. Gilmore acknowledged that he understood his rights and he waived them. During the interview Baker asked Gilmore if he had looked up a website with a title referring to "daddy's little girl" performing a sex act. CP at 339. Gilmore

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

said "possibly" then said "probably." CP at 339. He denied ever showing MB something on his computer involving sex acts between an adult and a child.

Baker obtained a search warrant and seized Gilmore's computer. He delivered the computer to Detective Jason Keays at the Washington State Patrol High Tech Crime Unit. Keays searched Gilmore's hard drive using search terms having to do with family sexual abuse, and generated reports listing websites that had been accessed on the computer that included those terms.

Baker then received back the computer along with the reports Keays had generated. There were thousands of entries listed in the reports. Baker searched some of the websites, including several websites involving incest and sexual relations between fathers and daughters. Baker printed several photographs taken from the websites involving minors engaged in sexually explicit conduct.

*Criminal Charges*

The State charged Gilmore with one count of first degree child molestation, one count of communication with a minor for immoral purposes, and four counts of first degree viewing depictions of a minor engaged in sexually explicit conduct.

*Pretrial Proceedings*

The trial court held a child hearsay hearing pursuant to RCW 9A.44.120 to address the admissibility of MB's statements to Candice, Kathleen, and Mangahas. The trial court ruled that the hearsay statements were admissible. The trial court also held a CrR 3.5 hearing to determine whether Gilmore's interview with Baker and Blankenship was admissible, and it ruled that the interview and Gilmore's statements were admissible.

4

The State filed a motion in limine requesting that the trial court prohibit Gilmore from wearing his Navy uniform during the trial. During discussion of the motions in limine, Gilmore's defense attorney did not object to the State's request or provide any legal argument that Gilmore had a right to wear his uniform. But defense counsel did state that Gilmore would prefer to wear the uniform. The trial court ruled that Gilmore could not wear his uniform.

*Trial Testimony*

At trial, Kathleen testified about what MB told her. Candice testified about what MB showed her on the computer. Candice testified that she did not know what to do at first after talking to Gilmore about what MB had shown her. She said she felt she was "between a rock and a hard place" because she wanted to give Gilmore "the benefit of the doubt, while still trying to believe [MB]." 2 RP at 249-50. But Candice stated that after she realized what was going on, she has "not stopped supporting [MB] since." 2 RP at 250.

Mangahas testified at trial. The State also admitted and showed the jury the video tape of MB's interview with Mangahas.

MB also testified. MB testified about how she used Gilmore's computer to search for "daddy's little girl" performing a sex act and showed it to her mother. 3 RP at 327-28. She testified that Gilmore had shown her the website. She said that the website had pictures and videos of adults and children who were not wearing any clothing. She could see their private parts. She said she saw private parts "[g]oing in each other" in the pictures and videos. 3 RP at 340. On one occasion she went into Gilmore's room and saw him looking at the pictures on the website.

In addition, MB testified that Gilmore had touched her private part with his finger at least once.

Baker testified and the State admitted and showed to the jury the video tape of Gilmore's interview with Baker and Blankenship. Keays and Baker also testified about the websites that had been searched on Gilmore's computer. Keays acknowledged that he did not locate any photographs or videos of child pornography that were actually on Gilmore's computer. Baker discussed the photographs he had taken of the website images and testified that he believed the children depicted in those photographs were under age 16. One of the photos showed a girl who appeared to him to be under the age of 10.

*Conviction and Sentence*

The jury convicted Gilmore of one count of first degree child molestation, one count of communicating with a minor for immoral purposes, and four counts of viewing depictions of minors engaged in sexually explicit conduct. The jury also found by special verdict that Gilmore and MB were members of the same family or household for the child molestation charge and the communicating with a minor charge and that Gilmore abused a position of trust for the child molestation charge.

The trial court sentenced Gilmore to 198 months. Before imposing LFOs, the trial court asked the State if it had anything to present on Gilmore's ability to pay. The State said, "the defendant did say in the PSI that when he gets released he will be working, so he anticipates being able to pay the legal financial obligations." RP (June 5, 2015) at 8. The trial court imposed a discretionary LFO of $1,135 for court-appointed attorney fees.

Gilmore appeals his conviction and the imposition of the LFO.

ANALYSIS

A.    SUFFICIENCY OF EVIDENCE – VIEWING DEPICTIONS OF MINORS

Gilmore argues that the State presented insufficient evidence to support his conviction of four counts of viewing depictions of a minor engaged in sexually explicit conduct because there were no images of minors engaged in sexually explicit conduct on his computer and the State could not prove that he had actually viewed the websites listed in his computer history. We disagree.

1.    Legal Principles

When evaluating the sufficiency of evidence for a conviction, the test is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182 (2014). We must assume the truth of the State's evidence and all reasonable inferences drawn from that evidence. *Id.* at 106. We treat circumstantial evidence as equally reliable as direct evidence. *State v. Farnsworth*, 185 Wn.2d 768, 775, 374 P.3d 1152 (2016). We also will defer to the trier of fact's resolution of conflicting testimony and evaluation of the persuasiveness of the evidence. *Homan*, 181 Wn.2d at 106

The State charged Gilmore with four counts of viewing depictions of a minor engaged in sexually explicit conduct under RCW 9.68A.075(1). The statute states:

> A person who intentionally views over the internet visual or printed matter depicting a minor engaged in sexually explicit conduct as defined in RCW 9.68A.011(4) (a) through (e) is guilty of viewing depictions of a minor engaged in sexually explicit conduct in the first degree.

RCW 9.68A.075(1). The sexual conduct listed in RCW 9.68A.011(4)(a)-(e) includes sexual intercourse (including genital-genital and oral-genital), penetration of the vagina by any object, and masturbation. A minor is defined as any person under 18 years of age. RCW 9.68A.011(5).

>    2.    Sufficiency of Evidence Analysis

Here, the State produced evidence that Gilmore searched certain pornographic websites on specific dates, and that when Baker accessed those websites he observed depictions of minors engaged in sexually explicit conduct. Gilmore argues that this evidence is speculative because Keays and Baker did not access these websites until a several weeks after the State alleged that he accessed them, and that there was no evidence that the same images were on the websites months earlier or that he had viewed them. He also emphasizes that Keays and Baker admitted that there were no images of minors engaged in sexually explicit conduct on Gilmore's computer.

However, evidence is sufficient for a conviction if a reasonable inference can be drawn from the evidence that the defendant has engaged in the alleged conduct. *See Homan*, 181 Wn.2d at 105-06. Using internet history and search terms, Keays provided expert computer forensic testimony establishing that Gilmore accessed hundreds of pornographic websites. And using that internet history, Baker accessed many of those sites and observed images of minors engaged in sexually explicit conduct. This testimony provided strong circumstantial evidence that Gilmore also viewed images of minors engaged in sexually explicit conduct on those websites.

Gilmore is correct that the State did not provide direct evidence that he actually viewed the images that Baker observed several weeks after Gilmore had accessed the websites. But the

State did provide circumstantial evidence, which is just as reliable as direct evidence. *Farnsworth*, 185 Wn.2d at 775. This evidence, when viewed in the light most favorable to the State, was sufficient to give rise to an inference that Gilmore viewed depictions of minors engaged in sexually explicit conduct.

Accordingly, we hold that the State provided sufficient evidence to convict Gilmore of four counts of viewing depictions of a minor engaged in sexually explicit conduct.

B.      INEFFECTIVE ASSISTANCE OF COUNSEL

Gilmore argues that his defense counsel was ineffective for failing to object to (1) Candice's testimony on MB's credibility and the prosecutor's reference to the testimony in closing, (2) a comment Candice made about Gilmore's guilt, (3) admission of photo evidence from the searched websites, and (4) Baker's opinion on the age of individuals in photos. We disagree.

1.      Legal Principles

We review claims of ineffective assistance of counsel de novo. *State v. Hamilton*, 179 Wn. App. 870, 879, 320 P.3d 142 (2014). To prevail on an ineffective assistance of counsel claim, the defendant must show both that (1) defense counsel's representation was deficient and (2) the deficient representation prejudiced the defendant. *State v. Grier,* 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011). Representation is deficient if after considering all the circumstances, it falls below an objective standard of reasonableness. *Id.* at 33. Prejudice exists if there is a reasonable probability that except for counsel's errors, the result of the proceeding would have been different. *Id.* at 34.

We presume that counsel's assistance was effective unless the defendant shows in the record the absence of legitimate or tactical reasons supporting counsel's conduct. *Id.* at 33-34. If a claim of ineffective assistance of counsel is based on counsel's failure to object, a defendant must show that an objection likely would have been sustained. *State v. Fortun–Cebada,* 158 Wn. App. 158, 172, 241 P.3d 800 (2010) (evidentiary ruling); *State v. Johnston*, 143 Wn. App. 1, 19, 177 P.3d 1127 (2007) (prosecutor comments).

2.    Opinion on Credibility

Gilmore argues that his counsel was ineffective for failing to object to Candice's opinion on MB's credibility and the prosecutor's references to that testimony during closing argument. We disagree.

a.    Candice's Testimony

The trial focused in large part on MB's credibility. Defense counsel made MB's credibility a central issue in his opening statement:

> [Y]ou will learn that the people that know [MB] best -- her mother, perhaps her grandmother to a lesser degree -- when they found out about these allegations, they either did not believe her or at least did not act consistent with someone who would believe their child.

RP (May 12, 2015) at 13.

During the State's direct examination, Candice testified about her initial reluctance to believe her daughter:

> A.  I was caught between a rock and a hard place.  So I was trying to figure out where the truth really was.
>
> Q.  Why are you saying you were in between a rock and a hard place?
>
> A.  Because something like that, you know, I was trying to give [Gilmore] the benefit of the doubt, while still trying to believe my daughter.  And it's just

> something that's all-around hard to accept. So it -- it took me some time, and then I had my eyes opened and realized what was going on and have not stopped supporting my daughter since.

2 RP at 249-50.

In his closing argument, defense counsel returned to his opening statement theme by repeating the line about how those who knew MB best, such as her mother, did not know whether to believe her. And he specifically referenced Candice's testimony:

> And [Candice], [MB's] own mother, her reaction was she didn't know what to believe. And her mother -- and Candice's mother, Kathy, didn't know what to believe. These are the people who knew her best. Better than any of you. . . . So I think it is important to see what the people who knew her best, what their reaction when they heard what the allegations were. And I wouldn't say they did nothing, but they didn't do anything consistent with absolutely believing [MB]'s allegation.

4 RP at 637-38.

Based on defense counsel's questioning and argument, Gilmore cannot show that defense counsel did not have a tactical reason for not objecting to Candice's testimony. MB's credibility was central to the case. Defense counsel's strategy was to focus on the fact that Candice and others who knew MB best initially were not sure whether to believe her. Candice's testimony was useful and necessary for this argument. In fact, defense counsel referred to that testimony during his closing argument.

There is a strong presumption that defense counsel's representation was effective. Gilmore has provided no basis for overcoming that presumption. Therefore, we hold that defense counsel was not deficient for failing to object to Candice's testimony.

  b.  Closing Argument

During closing argument the prosecutor referenced Candice's testimony about MB's allegations:

11

> Candice described being stuck between a rock and a hard place. . . . I didn't want to necessarily -- I didn't want to believe [MB]. I wanted to believe that this man who I had married, had a child with, had known for 20 years would not do this.
>
> But then when law enforcement came and told her some of the disclosures that [MB] had made, it became absolutely clear to her that her daughter was telling the truth. And what she said was, I haven't stopped supporting my daughter since.

4 RP at 622-23.

A prosecutor may not express a personal opinion on the credibility of a witness. *State v. Allen*, 161 Wn. App. 727, 746, 255 P.3d 784 (2011). However, a prosecutor "has wide latitude in closing argument to draw reasonable inferences from the evidence and may freely comment on witness credibility based on the evidence." *Id.*

Gilmore fails to show that an objection to the prosecutor's comment would have been sustained. The prosecutor did not improperly express her personal opinion on MB's credibility. Instead, she argued based on the evidence – Candice's testimony – and prosecutors may freely comment on credibility based on the evidence. *Id.* And as discussed above, defense counsel may have had a strategic reason not to object to a discussion of Candice's testimony. Therefore, we hold that defense counsel was not deficient for failing to object to the prosecutor's comment.

3. Candice's Opinion on Guilt

Gilmore argues that counsel was ineffective for failing to object to Candice's comment that he contends gave her opinion on Gilmore's guilt. We disagree.

On redirect examination, Candice testified about her reaction to Gilmore's arrest:

> A. I got a call. He's been arrested and I still didn't really know the whole truth of the scope of the situation. So I was upset that my mom had turned him in. But when the sheriff's department showed up, it cleared a lot of things up and I was not upset any more.
>
> Q. What do you mean "it cleared a lot of things up"?

A. Well, when they came and they told me what she had said about the images in that video --

Q. And "she" being [MB]?

A. Yes, [MB]. Good. He needed to be arrested. *If he was showing her things like that and doing some of what was talked about and said*, then he needed to be arrested.

2 RP at 268-69 (emphasis added).

A witness generally may not offer opinion testimony regarding the defendant's guilt or veracity because such testimony is unfairly prejudicial to the defendant and invades the exclusive province of the jury. *State v. Demery*, 144 Wn.2d 753, 759, 30 P.3d 1278 (2001). But reading Candice's comment in context reveals that she did not actually express an opinion about whether Gilmore was guilty, but instead explained why she stopped being upset about Gilmore's arrest. Candice did not say that she thought Gilmore had done the things MB talked about. She said that *if* he had done what MB said, *then* he needed to be arrested. Candice's comment did not invade the exclusive province of the jury to determine guilt, because her comment did not indicate whether or not she thought he was guilty.

Candice's comment was not improper and not objectionable. We hold that defense counsel was not deficient for failing to object to Candice's testimony.

4.    Photo Evidence

Gilmore argues that defense counsel was ineffective for failing to object to photos of pornographic images found on web sites searched on Gilmore's computer presented by the State. We disagree.

The State introduced photos of pornographic images that Baker found while performing internet searches using the terms found on Gilmore's search history. Gilmore argues that the

photos were irrelevant under ER 401 because they were found in searches conducted several weeks after the timestamps on Gilmore's search history. He also argues that the images were more prejudicial than probative and therefore inadmissible under ER 403.

However, the photos were relevant to corroborate MB's account of what she saw when she typed in "daddy's little girl" performing a sex act. And they were relevant to show that certain search terms found on Gilmore's computer could lead to images of child pornography when used in a search engine. Although the State may not have been able to show that those specific images were images that appeared at the time Gilmore searched the term, the photos provided circumstantial evidence that Gilmore did view similar images.

Because the photographs were admissible, Gilmore cannot show that a defense objection would have been sustained. Therefore, we hold that defense counsel was not ineffective for failing to object to the photographs.

5.    Opinion on Age

Gilmore argues that defense counsel was ineffective for failing to object to Baker's opinion that the girls in the photographs discussed above were under the age of 16 because Baker was not an expert on identifying age and because an expert opinion was not needed. We disagree because Baker's opinion testimony was admissible.

Under ER 701, a witness not testifying as an expert can offer opinions that are rationally based on the witness's perceptions and will be helpful to the trier of fact. A lay witness can only offer opinion testimony that is not based on scientific, technical, or other specialized knowledge covered by ER 702. ER 701; *State v. Montgomery*, 163 Wn.2d 577, 591, 183 P.3d 267 (2008). It is within the trial court's discretion whether to admit lay opinion testimony under ER 701. *See*

*State v. Blake*, 172 Wn. App. 515, 523, 298 P.3d 769 (2012). And ER 704 provides if an opinion is otherwise admissible, it is not objectionable for embracing an ultimate issue to be decided by the trier of fact.

Determining a person's general age does not require scientific, technical, or other specialized knowledge. Baker's opinions were based on his own perceptions. And he testified about his experience raising his own three children and performing volunteer work with other children. He stated that he felt comfortable based on that experience estimating the ages of children. As a result, if Gilmore had objected the trial court likely would have found that his testimony was helpful to the jury and therefore admissible under ER 701.

Accordingly, we hold that Gilmore's defense counsel was not deficient for failing to object to Baker's opinions on the age of the people in the pornographic photos.

C.      WEARING MILITARY UNIFORM AT TRIAL

Gilmore argues that the trial court erred in granting the State's motion in limine and preventing Gilmore from wearing his Navy uniform at trial. We decline to consider this issue because Gilmore failed to object in the trial court.

We generally will not consider an issue on appeal when the appellant fails to object to the claimed error in the trial court. RAP 2.5(a). Here, Gilmore did not expressly object to the State's motion in limine. He said that he would prefer to wear his uniform. But he did not provide any legal argument in support of wearing his uniform, and in fact he conceded that the State's authority established that there was no right to wear a uniform at trial. And Gilmore did not object when the trial court ruled that he could not wear his uniform.

We decline to consider Gilmore's argument that the trial court erred in ruling that he could not wear his uniform at trial.

D.    SAG CLAIMS

1.    Redundant SAG Claims (#3, #4, #8)

In SAG #3 and #4, Gilmore asserts that the State presented insufficient evidence to support his convictions for viewing depictions of minors engaged in sexually explicit conduct because the State did not show that he actually clicked the links and viewed the images or that he had images on his computer. But those arguments were raised in his brief and are addressed above.

In SAG #8, Gilmore argues that his counsel was ineffective for failing to object to Baker's testimony giving his opinion on the age of individuals. But that argument was raised in his brief and addressed above.

2.    Impermissibly Vague SAG Claims (SAG #10, # 15, #16, #17, #18, #19)

Although RAP 10.10(c) does not require an appellant refer to the record or cite authority in a SAG, the rule does require an appellant to inform this court of the "nature and occurrence of alleged errors." The following assertions are too vague to properly inform us of the error.

In SAG #10, Gilmore asserts that the witnesses improperly bolstered MB's testimony and character. But he does not explain what witnesses or what testimony bolstered MB's testimony and character.

In SAG #15, Gilmore asserts that his defense counsel provided deficient representation by failing to propose lesser included offense instructions. But he does not explain what lesser included offense instructions his defense counsel should have proposed or for what counts.

16

In SAG #16, Gilmore asserts that defense counsel was ineffective for failing to move to sever the charges. But he does not explain which charges should have been severed.

In SAG #17, Gilmore asserts that defense counsel was ineffective for failing to call defense witnesses. But he does not identify the witnesses that defense counsel should have called.

In SAG #18, Gilmore asserts that defense counsel was ineffective for failing to challenge the authenticity of evidence. But he does not direct our attention to any particular evidence.

In SAG #19, Gilmore cites generally to the closing argument and asserts that the prosecutor gave an opinion about the victim's statements and his testimony. But he does not identify what portions of the closing argument he challenges or describe the nature of the alleged improper opinion.

Accordingly, we cannot review these vague assertions.

3.   Unpreserved SAG Claims (SAG #7, #9)

In SAG #7, Gilmore asserts that the trial court erred in allowing MB to testify at trial, claiming that MB should not have been permitted to testify because she could not distinguish reality from fantasy.[3] But Gilmore did not object to MB testifying or raise the issue of MB's competency in the trial court. Therefore, he cannot challenge MB's competency to testify on appeal. RAP 2.5(a).

In SAG #9, Gilmore asserts that the trial court erred in admitting MB's forensic interview because the interviewer failed to ask MB if she knew the difference between the truth and a lie

---

[3] The trial court held a hearing to determine whether Candice and Kathleen could refer to hearsay statements MB made to them. Whether MB was competent to testify herself was not at issue in that hearing.

and failed to instruct MB to tell the truth. But Gilmore did not object to the admission of the interview in the trial court. Therefore, he cannot challenge its admission on appeal. RAP 2.5(a).

        4.   Sufficiency of Evidence Claims (SAG #11, #12)

In SAG #11 and SAG #12, Gilmore argues that there was insufficient evidence to convict him of first degree child molestation. We disagree.

As stated above, evidence is sufficient if after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *Homan*, 181 Wn.2d at 105.

To convict Gilmore of first degree child molestation, the State had to prove that Gilmore had "sexual contact" with MB. RCW 9A.44.083. "Sexual contact" means any touching of the sexual or intimate parts of another for purposes of sexual gratification. RCW 9A.44.010(2). Here, the State produced clear evidence in the form of MB's statements to Mangahas and MB's own testimony at trial that Gilmore had touched MB on her private part. This evidence was sufficient to convict Gilmore of first degree child molestation.

Gilmore makes two assertions. First, in SAG #11 he emphasizes that there was no medical or physical evidence to support the child molestation charge. But no authority requires medical or physical evidence to convict on a child molestation charge.

Second, in SAG #12 Gilmore emphasizes that there was no evidence of prolonged touching – i.e., rubbing or massaging – which he claims is required to support a child molestation charge. But no authority requires "prolonged" touching to convict on a child molestation charge; mere touching is sufficient.

We hold that the State produced sufficient evidence to convict Gilmore of first degree child molestation.

    5.    Prosecutorial Misconduct Claims (SAG #1, #5, #6, #20)

        a.    Legal Principles

To prevail on a claim of prosecutorial misconduct, a defendant must show that in the context of the record and all of the circumstances of the trial, the prosecutor's conduct was both improper and prejudicial. *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011). Misconduct is prejudicial if there is a substantial likelihood it affected the verdict. *State v. Emery*, 174 Wn.2d 741, 760, 278 P.3d 653 (2012). However, a defendant waives any error by failing to object to the prosecutor's improper conduct, unless that conduct was so flagrant and ill-intentioned that an instruction could not have cured the resulting prejudice. *Id.* at 760-61.

        b.    Comment on Silence/Demeanor

In SAG #1, Gilmore claims the prosecutor committed misconduct in her closing argument by commenting on his silence during questioning. He challenges the following comment during closing argument:

> His answers to the rest of the questions, I would suggest, are equivocal; again, like the "possibly," ending up, "finally" and "probably." His body language -- and this is something we talked about when we're talking about credibility. His body language, if you watched him during the interview, he appears uninterested. He's looking at his hands and kind of cleaning his fingernails while law enforcement is accusing him of molesting his eight-year-old daughter and searching for child pornography. And he seems irritated, uninterested, and is just kind of sitting there like it is any other day.
>
> This is not consistent with a person who has not committed these crimes. A person who has not committed these crimes and is being accused of them by law enforcement is going to be doing something like: I did not do this. I didn't do this. You can search whatever; you can look at my computer. They are going to be vehement. They are not going to be irritated. They are not going to be looking at

their fingernails to clean out their fingernails. They are going to be very vocal. Yes, everyone is going to respond differently.

But the defendant's response in [sic] law enforcement is absolutely inconsistent with somebody who did not commit these offenses.

4 RP at 607-08. Gilmore did not object to this argument.

The Fifth Amendment to the United States Constitution states that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." Article I, section 9 of the Washington Constitution states that "[n]o person shall be compelled in any criminal case to give evidence against himself." "Both provisions guarantee a defendant the right to be free from self-incrimination, including the right to silence." *State v. Pinson*, 183 Wn. App. 411, 417, 333 P.3d 528 (2014). This right precludes the State from using the defendant's silence to its advantage either as substantive evidence of guilt or to invite an inference that the defendant's silence is an admission of guilt. *State v. Burke,* 163 Wn.2d 204, 217, 181 P.3d 1 (2008).

On the other hand, commenting on a defendant's demeanor is different than commenting on his silence. *State v. Barry*, 183 Wn.2d 297, 307-08, 352 P.3d 161 (2015). A comment on the defendant's demeanor does not violate his right to silence. *Id.* at 308; *see also State v. Easter*, 130 Wn.2d 228, 243, 922 P.2d 1285 (1996).

Here, Gilmore did not remain silent at any point during the police interview. Therefore, the prosecutor's comment cannot constitute a comment on silence and did not violate Gilmore's Fifth Amendment right to silence.

Gilmore also claims that the prosecutor violated his right to a fair trial by commenting on his demeanor. He cites *Barry* to support his argument, but that case is inapplicable. *Barry* considered whether the jury could appropriately consider the defendant's *courtroom* demeanor as

20

evidence. 183 Wn.2d at 301. Here the prosecutor's comment referenced Gilmore's demeanor during the police interview. Further, the prosecutor argued that Gilmore's responses were not credible or convincing based on his accompanying demeanor. Such an argument falls within the wide latitude granted to prosecutors when arguing from the evidence.

We hold that the prosecutor's comment about how Gilmore acted while being interviewed was not improper.

### c. Closing Argument

In SAG #5, Gilmore asserts that the prosecutor improperly attempted to evoke an emotional response from the jury during closing argument by referring to MB's demeanor while she was testifying. The prosecutor did argue that MB was reluctant to testify and that it was difficult for her to testify. But it is not improper to discuss a victim's demeanor in discussing her credibility. *See State v. Ortega-Martinez*, 124 Wn.2d 702, 714, 881 P.2d 231 (1994) (stating that a jury may evaluate the victim's demeanor in a rape case). We hold that the prosecutor's argument regarding MB's demeanor did not constitute misconduct.

### d. Leading Questions

In SAG #6, Gilmore asserts that over his objections, the prosecutor was allowed to ask MB leading and suggestive questions in violation of ER 611. Gilmore objected to only one question during MB's direct examination on the ground that it was leading. The trial court overruled the objection because limited leading is allowed with child witnesses. Gilmore does not identify any other alleged leading questions.

The use of leading questions in the examination of a child witness is within the trial court's discretion. *State v. Canida*, 4 Wn. App. 275, 279, 480 P.2d 800 (1971). We hold that to

the extent the prosecutor used leading questions to examine MB, those questions did not constitute misconduct.

e. Prosecutorial Vindictiveness

In SAG #20, Gilmore asserts prosecutorial vindictiveness because (1) the State filed an amended information adding new charges on the first day of trial, (2) the prosecutor attempted to provoke an emotional response and aggravate him during cross-examination, and (3) the prosecutor told the jury during closing argument that he was not telling the truth and lying.

Due process principles prohibit prosecutorial vindictiveness, which occurs when the State acts against a defendant in response to the defendant's exercise of his constitutional or statutory rights. *State v. Korum*, 157 Wn.2d 614, 627, 141 P.3d 13 (2006). Prosecutorial vindictiveness includes the intentional filing of a more serious crime in retaliation for a defendant's lawful exercise of a right. *State v. Bonisisio,* 92 Wn. App. 783, 790, 964 P.2d 1222 (1998). But to prevail on such a claim, a defendant must present evidence of actual vindictive motivation. *State v. McDowell*, 102 Wn.2d 341, 344, 685 P.2d 595 (1984).

Gilmore has identified no evidence in the record showing actual vindictiveness by the State. Therefore, we reject this argument.

6. Ineffective Assistance of Counsel Claims (SAG #2, #13, #14)

a. Legal Principles

As stated above, to prevail on an ineffective assistance of counsel claim, the defendant must show both that (1) defense counsel's representation was deficient and (2) the deficient representation prejudiced the defendant. *Grier,* 171 Wn.2d at 32-33. We presume that defense

counsel's assistance was effective until the defendant shows in the record the absence of legitimate or tactical reasons supporting counsel's conduct. *Id.* at 33-34.

b.    Failure to Move to Suppress Evidence

In SAG #13, Gilmore asserts that his defense counsel provided deficient representation by failing to file a motion to suppress evidence obtained in exploratory searches of his computer. But the State obtained a warrant to search Gilmore's computer, and he does not challenge the validity of the warrant. Therefore, defense counsel had no basis for filing a motion to suppress evidence discovered in the search. We reject Gilmore's ineffective assistance of counsel claim on this basis.

c.    Failure to Object to Experts

In SAG #14, Gilmore asserts that his defense counsel provided deficient representation by failing to object to expert testimony from Mangahas and Baker based on their lack of qualifications. But Mangahas and Baker did not provide expert testimony. Mangahas testified about her forensic interview with MB. She did not express any expert opinions about what MB told her, other than possibly the grooming testimony discussed below. Baker testified about his investigation and his search of Gilmore's computers, but he did not provide any expert testimony beyond the basic expertise of a law enforcement officer. Therefore, there was no testimony that was objectionable as incompetent expert testimony. We reject Gilmore's ineffective assistance of counsel claim on this basis.

d.    Failure to Object to Comments on Grooming

In SAG #2, Gilmore asserts that his defense counsel provided deficient representation by failing to object to testimony and closing argument about the grooming process and techniques

because the witnesses who testified did not have training or knowledge on this subject. Mangahas testified about grooming and the prosecutor emphasized that testimony in closing argument. But Mangahas testified that she did have training and/or experience in grooming behavior, and she provided a detailed description of such behavior. There is no indication that the trial court would have excluded her testimony or the prosecutor's argument if defense counsel had objected based on a lack of qualifications. We reject Gilmore's ineffective assistance of counsel claim on this basis.

E.      IMPOSITION OF LFOS

Gilmore argues for the first time on appeal that the trial court erred by imposing a discretionary LFO without making an inquiry into his ability to pay. We exercise our discretion to consider Gilmore's challenge to the discretionary LFO,[4] and we hold that the trial court did assess Gilmores's ability to pay and therefore did not err in imposing the discretionary LFO.

Before imposing discretionary LFOs, the trial court must make an individualized inquiry into the defendant's present and future ability to pay. Former RCW 10.01.160(3) (1995); *State v. Blazina*, 182 Wn.2d 827, 837-38, 344 P.3d 680 (2015). Including boilerplate language in the judgment and sentence stating that the defendant has an ability to pay does not satisfy this requirement. *Blazina*, 182 Wn.2d at 838.

Gilmore argues that the trial court made no inquiry into his ability to pay. But the record indicates that the trial court asked the State whether Gilmore had the ability to pay discretionary LFOs. And the State responded that Gilmore would have the ability to pay because he indicated that he would be working after his release. Gilmore does not argue that this inquiry was

---

[4] *State v. Blazina*, 182 Wn.2d 827, 830, 834-35, 344 P.3d 680 (2015).

No. 47693-2-II

insufficient. Accordingly, we affirm the trial court's imposition of the $1,135 discretionary LFO for court-appointed attorney fees and defense costs.

F.    APPELLATE COSTS

Gilmore asks that this court refrain from awarding appellate costs if the State seeks them. Under former RCW 10.73.160(1) (1995), we have discretion whether or not to award appellate costs to the State as the prevailing party in this case. RAP 14.2; *State v. Sinclair*, 192 Wn. App. 380, 389-90, 367 P.3d 612, *review denied*, 185 Wn.2d 1034 (2016). We exercise our discretion to waive appellate costs in this case.

CONCLUSION

We affirm Gilmore's convictions and the imposition of the discretionary LFO.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, A.C.J.

We concur:

WORSWICK, J.

MELNICK, J.

25