[No. 398-1. Division One—Panel 1. February 16, 1971.]

THE STATE OF WASHINGTON, *Respondent*, v. MAURICE L. CANIDA, *Appellant*.

*Robert L. Butchart*, for appellant.

Robert E. Schillberg, Prosecuting Attorney, and James D. Twisselman, Deputy, for respondent.

UTTER, J.—Maurice L. Canida was tried and convicted of indecent exposure involving two 6-year-old girls who testified at his trial. His appeal presents three issues to this court: (1) the competency of the two children to testify; (2) the admissibility of testimony by their mothers regarding statements made by the children after the incident; and (3) the use of leading questions during the direct examination of the children.

We hold Canida's assignment of error regarding the competency of the children as witnesses to be without merit for the reasons stated in State v. Sims, 4 Wn. App. 188, 480 P.2d 228 (1971).

The mothers of the two girls, during their testimonies, related statements made by their children after the incident. One child, shortly after the incident occurred, burst into her home with a "funny look on her face" and in response to her mother's inquiries as to what was wrong, told of the incident. The mother of the second child was informed of the statement of the first child by that child's mother. She then asked her child whether any of the men across the street had done anything. The child's answer was, "Yes, one had his pants open." Both children identified Canida to their mothers as the offending party. It appears from the record the exposure and the children's statements relating to it occurred within the same afternoon.

Canida contends the mothers' testimonies were not admissible under the res gestae exception to the hearsay rule. Our Supreme Court has indicated the elements of the res gestae exception to the hearsay rule are:

(1) The statement or declaration made must relate to the main event and must explain, elucidate, or in some way characterize that event; (2) it must be a natural declaration or statement growing out of the event, and not a mere narrative of a past, completed affair; (3) it must be a statement of fact, and not the mere expression

of an opinion; (4) it must be a spontaneous or instinctive utterance of thought, dominated or evoked by the trans-'action or occurrence itself, and not the product of premeditation, reflection, or design; (5) while the declaration or statement need not be coincident or contemporaneous with the occurrence of the event, it must be made at such time and under such circumstances as will exclude the presumption that it is the result of deliberation, and (6) it must appear that the declaration or statement was made by one who either participated in the transaction or witnessed the act or fact concerning which the declaration or statement was made.

*Beck v. Dye,* 200 Wash. 1, 9, 92 P.2d 1113, 127 A.L.R. 1022 (1939). Exceptions are made to the rule excluding hearsay statements whenever reason and logic suggest their reliability and trustworthiness. 5 J. Wigmore, Evidence §§ 1420, 1422 (1940). The reliability of statements coming within the Beck rule is furnished by the excitement or spontaneity of their declaration which suspends the witness' power of reflection or fabrication. C. McCormick, Law of Evidence § 272 (1954).

■ The elements of the rule as set out in *Beck* are the accepted law of our state. *Johnston v. Ohls,* 76 Wn.2d 398, 405, 457 P.2d 194 (1969). The label "res gestae" is confusing, however, as it does not demonstrate correctly the reasons for the rule.[1] The term "excited utterance" more

---

[1]Use of the term res gestae has received much criticism.

"The phrase 'res gestae' has long been not only entirely useless, but even positively.harmful. It is useless, because every rule of Evidence to which it has ever been applied exists as a part of some other well-established principle and can be explained in the terms of that principle. It is harmful, because by its ambiguity it invites the confusion of one rule with another and thus creates uncertainty as to the limitations of both. . . . Even if there were no accepted name for one or another doctrine, any name would be preferable to an empty phrase so encouraging to looseness of thinking and uncertainty of decision." 6 J. Wigmore, Evidence § 1767 (1940).

"[F]our exceptions to the hearsay rule . . . have become fairly well recognized as distinct exceptions, with different indicia of special trustworthiness. These are (1) Declarations of present bodily condition, (2) declarations of present mental states and emotions, (3) excited utterances, and (4) declarations of present sense-impressions. Admission of all these classes of declarations was, in the early stages, usually ex-

clearly represents the reason for the exception and should be used.

 The statements made by the children to their mothers comply with the six elements of the excited utterance exception. The fact the statements were responses to the mothers' questions does not forbid their use. *State v. Smith,* 74 Wn.2d 744, 446 P.2d 571 (1968); *Robbins v. Greene,* 43 Wn.2d 315, 261 P.2d 83 (1953). The admissibility of excited utterances, in all cases, depends upon whether the declarant was still under the influence of the event so that his statement could not have been the result of fabrication, intervening actions, or the exercise of choice or judgment. *Johnston v. Ohls, supra.* We believe the declarants were still so influenced here. The spontaneity of the first child's statement is apparent in her excited state at the time of her declaration.

 The second child's response was not contemporaneous with the event; however, a spontaneous declaration need not be made simultaneously with the event it describes. The circumstance of the declaration must be such as will exclude the presumption it was the result of deliberation or fabrication. *May v. Wright,* 62 Wn.2d 69, 381 P.2d 601 (1963). The danger of fabrication during the interval of time between the exposure and the response was lessened by the young age of the child, inasmuch as the possibility such a young child would or could fabricate

---

plained in terms of *res gestae* and this usage still lingers with some courts, especially in respect to excited utterances.

"In addition, the phrase *res gestae* is likewise frequently employed to explain the admission of declarations which are not hearsay at all and this duality of usage indicates the indiscriminate coverage of the term. . . .

". . .

". . . Perhaps the time has now come when this policy of widening admissibility will be even better served by striving for a clearer analysis of the different classes of evidence coming in under the phrase *res gestae* and of the justifying reasons for the admission of each class, as a basis for pointing out the need for further liberalization. If so, we could well jettison the ancient phrase [res gestae], with due acknowledgment that it has well served its era in the evolution of evidence law." C. McCormick, Law of Evidence § 274 (1954).

the facts necessary to establish an indecent exposure is remote (*Johnston v. Ohls, supra*), and our examination of the record indicates that the trial court did not err when it allowed the answer into evidence.

 Appellant contends the leading questions put to the children by the prosecution resulted in an unfair trial. The use of leading questions during the direct examination of a child witness is a matter within the sound discretion of the trial court. *State v. Allen,* 70 Wn.2d 690, 424 P.2d 1021 (1967). We find no abuse of this discretion.

Appellant's conviction is affirmed.

HOROWITZ, C.J., and WILLIAMS, J., concur.