[No. 1405-2.    Division Two.    December 31, 1974.]

THE STATE OF WASHINGTON, *Respondent*, v. ALFRED LEWIS BLOOMSTROM, *Appellant.*

*James B. Finlay* and *Steven E. Lundstrom*, for appellant.

*Anton J. Miller, Prosecuting Attorney*, for respondent.

PEARSON, C.J.—Defendant Alfred Lewis Bloomstrom appeals his conviction, judgment, and sentence for the crime of carnal knowledge involving an 8-year-old female child. In support of his appeal, defendant challenges two evidentiary rulings and claims that his right to a speedy trial under CrR 3.3(b) and (c) was violated. We find these claims without substantial merit and affirm the judgment.

It should be emphasized initially that defendant's identity was not in issue. He admitted on the witness stand that he was alone with the 8-year-old victim when she received an injury, consisting of a tear to the tissues between the rectum and vaginal areas, and extending to the inside of the vaginal canal. Defendant contended that he did not know how the injury, which was accompanied by substantial bleeding, had occurred. He testified that his automobile, in which the two of them had been riding, stalled and he was occupied with effecting repairs at the time the injury occurred. Medical testimony established that a forcible rape could account for the damage.

Two damning pieces of evidence established the essential elements of the crime. The first was the presence of defend-

ant's pubic hairs in the victim's underclothing. The second was the description of the occurrence by the young victim to her mother and another witness within moments after she was returned to her mother by the defendant. The latter evidence was allowed over defendant's objection and furnishes a principal assignment of error.

The victim's mother and a female friend of the mother took the victim to a bedroom immediately after she was returned. When the mother asked what had happened, the child replied to the effect that the defendant had a big finger in his pants; that he took her pants down and pushed the big finger into her real hard.

Defendant claims that since the victim was incompetent to testify, her statements could not be allowed through the testimony of other witnesses unless admissible under the "excited utterance" exception to the hearsay rule.[1] It is urged that the fourth element of that rule, namely spontaneity, is absent where the mother's questions intervene.[2]

■ We agree that if the elements of the excited utterance exception to the hearsay rule are present, the hearsay

---

[1] The term "res gestae" is sometimes used as the denomination of admissibility of this type of testimony. However, we agree with the court in *State v. Canida*, 4 Wn. App. 275, 480 P.2d 800 (1971) that "excited utterance" more clearly represents the reason for the exception.

[2] Elements of the excited utterance exception to the hearsay rule were set forth by the Supreme Court in *Beck v. Dye*, 200 Wash. 1, 9, 92 P.2d 1113, 127 A.L.R. 1022 (1939), as follows: "(1) The statement or declaration made must relate to the main event and must explain, elucidate, or in some way characterize that event; (2) it must be a natural declaration or statement growing out of the event, and not a mere narrative of a past, completed affair; (3) it must be a statement of fact, and not the mere expression of an opinion; (4) it must be a spontaneous or instinctive utterance of thought, dominated or evoked by the transaction or occurrence itself, and not the product of premeditation, reflection, or design; (5) while the declaration or statement need not be coincident or contemporaneous with the occurrence of the event, it must be made at such time and under such circumstances as will exclude the presumption that it is the result of deliberation, and (6) it must appear that the declaration or statement was made by one who either participated in the transaction or witnessed the act or fact concerning which the declaration or statement was made."

testimony of the child is admissible whether or not the child is competent as a witness. *State v. Canida,* 4 Wn. App. 275, 480 P.2d 800 (1971); *State v. Lounsbery,* 74 Wn.2d 659, 445 P.2d 1017 (1968).

We disagree with the assertion that the element of spontaneity is necessarily destroyed by the interjection of questions by the mother to the child. *State v. Smith,* 74 Wn.2d 744, 446 P.2d 571 (1968); *State v. Canida, supra.*

The question in all cases depends upon whether the declarant was still under the influence of the event so that her statement "could not have been the result of fabrication, intervening actions, or the exercise of choice or judgment." *State v. Canida, supra* at 278. The nature of the child's utterance as described by her mother, together with the close proximity of the declaration to the event and the circumstances of the declaration as corroborated by the other adult witness, convinces us that the element of spontaneity as well as the other elements of the excited utterance exception were clearly present.

Defendant urges that even if the complaint by the child might qualify under the excited utterance exception, still the court erred in allowing too many details of the event to be related to the jury. No direct authority is cited for this proposition and it seems to us there is an inherent weakness in its logic.

While there may be some reason to restrict hearsay testimony of excited utterances of adult witnesses to a simple statement of the nature of the complaint made (*see State v. Goebel,* 40 Wn.2d 18, 240 P.2d 251 (1952)), such a restriction on children would in most cases be totally unreasonable. For example, a female child of tender years cannot be expected to relate an occurrence of this kind in generic terms normally used by adults. The utterance, "he raped me," would be totally alien to the victim in this case, and lend credence to the charge that it was fabricated. The description given by the child to the mother here would be expected of a child of this age and the nature of the de-

scription tends to lend authenticity to the fact of the utterance. We find no error in the scope of the description.

. We turn now to another evidentiary ruling which is assigned as error on appeal. On the date of the alleged crime, the defendant and a friend visited the residence of one Carol Lapinoja. Over the defendant's objection, Mrs. Lapinoja was allowed to testify that when defendant arrived at her home he showed an unusual interest in her young children, including her 10-year-old daughter, Linda, and her 11-year-old daughter, Theresa. Defendant was somewhat drunk at the time, according to this witness, and offered money to each of the children. He also held Linda on his lap for a time. Carol Lapinoja became concerned over this conduct and sent the children outside. Defendant had never seen the children prior to this occasion.

Theresa Lapinoja was also allowed to testify over objection that defendant held her younger sister, Linda, on his lap and whispered to her, gave the children money, and whispered to Theresa that he would like to take her to the Dairy Queen for some ice cream. Defendant contends that this testimony was not relevant to the case and was highly prejudicial. *State v. Golladay,* 78 Wn.2d 121, 470 P.2d 191 (1970).

The State argues that the above-described conduct, preceding the criminal assault on the victim by a relatively short period of time, was relevant to show defendant's lustful disposition and to prove a pattern or modus operandi. *State v. Sims,* 4 Wn. App. 188, 480 P.2d 228 (1971). We do not find this argument persuasive, but for the reasons stated below, we think the evidence was relevant and admissible under other well-recognized principles.

■ It is axiomatic that an accused must be tried for the crime charged. Evidence of collateral conduct, whether criminal or otherwise, is generally inadmissible, unless necessary to prove an essential element of the crime charged. Indicators of relevancy to such an essential element of the crime must come within one or more of five exceptions to the general rule of exclusion, *i.e.,* (1) motive, (2) intent,

(3) absence of accident or mistake, (4) a common scheme or plan, or (5) identity. *State v. Goebel*, 36 Wn.2d 367, 218 P.2d 300 (1950); *State v. Hames*, 74 Wn.2d 721, 446 P.2d 344 (1968); *State v. Golladay, supra*; *State v. Sims, supra*.

The degree of relevance (*i.e.*, its probative value) must in any event be sufficient to outweigh any prejudicial effect of such evidence. *State v. Whalon*, 1 Wn. App. 785, 464 P.2d 730 (1970).

In our view, the testimony at issue was admissible under at least two of the exceptions noted in *State v. Goebel, supra*. Defendant's unusual interest in young girls with whom he had had no prior acquaintance, coupled with the close proximity of these events to the incident in question, was marginally relevant to explain defendant's *motive* in taking the young victim riding in his car, and to negate an inference that she received the injury *accidentally*.

Furthermore, the prejudicial nature of the testimony is lessened because the described conduct was not criminal and the relevancy to show motive and absence of accident, even though it was marginal, was well within the discretion of the trial court. *State v. Sims, supra*.

Finally defendant contends that his right to a speedy trial under CrR 3.3(b) and (c)[3] was violated. We disagree. Defendant was arraigned in Superior Court for Pacific County on August 24, 1973. His trial commenced on December 19, 1973.

While it appears on its face that the deadlines in those rules were violated, the record of the proceedings shows that the 27-day excess was warranted by the circumstances and authorized as excluded periods by CrR 3.3(d)(1) and (3).

The trial of the case was originally scheduled to commence November 7, 1973. This trial date aborted when on

---

[3] CrR 3.3(b) provides: "A criminal charge shall be brought to trial within 90 days following the preliminary appearance."

CrR 3.3(c) provides, in part: "A defendant unable to obtain pretrial release shall have priority and the charge shall be brought to trial within 60 days following the preliminary appearance."

October 26, 1973, defendant entered a plea of not guilty by reason of mental irresponsibility. Defendant was evaluated for that defense at Western State Hospital, and was not discharged until November 16, 1973. Another short continuance was allowed by the court because of the unavailability of a State's witness.

CrR 3.3(d)(1) excludes from the 90-day trial rule "[a]ll proceedings relating to the competency of the defendant to stand trial." CrR 3.3(d)(3) excludes "[d]elay granted by the court pursuant to section (e)." Under the latter section the trial court may grant continuances on the motion of the prosecuting attorney, if, among other things, "(ii) the state's evidence is presently unavailable, the prosecution has exercised due diligence, and there are reasonable grounds to believe that it will be available within a reasonable time; . . ." CrR 3.3(e)(2)(ii).

This latter provision, as well as the other provisions of CrR 3.3(e) vest discretion in the trial court to allow continuances where the interest of justice so requires and where undue prejudice to the defendant is not occasioned by the delay.

■ Here the short continuance was necessitated by the brief unavailability of a State's witness, which in turn would not have been required had the plea of mental irresponsibility not caused the first postponement. There is no showing of prejudice to the defendant and we find no abuse of discretion.

Defendant's contention that the 60-day rule contained in CrR 3.3(c) was violated is likewise frivolous. Defendant was released on bail on September 6, 1973. His bail was revoked at the instance of the bail bondsman and he was detained on October 18, 1973. His trial commenced 61 days later, on December 19, 1973. Again, however, had he not interposed the plea of mental irresponsibility his trial would have commenced on November 7, 1973. CrR 3.3(d)(1) allows the period pertaining to the competency

proceedings to be excluded from the 60-day time limit and hence there was in fact no violation of CrR 3.3(c).

Judgment affirmed.

ARMSTRONG and PETRIE, JJ., concur.

Petition for rehearing denied February 24, 1975.

Review denied by Supreme Court May 23, 1975.