IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 36610-3-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| ROGER W. FLOOK, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Roger Flook appeals after a jury found him guilty of first degree child molestation. He raises several arguments. We remand to modify two community custody conditions, but otherwise affirm.

FACTS

Roger Flook and Martha Montenegro were husband and wife, married in 2010. Ms. Montenegro had two children from a previous marriage, A.S. and J.S., her daughter and son respectively. A.S. was 11 years old in June 2014. J.S. was one year younger.

On June 6, 2014, Flook and Ms. Montenegro took A.S. and J.S. to Clarkston, Washington, for a church marriage retreat. The four stayed in a hotel room with one large bed. The four slept side by side, with Ms. Montenegro and Flook sleeping on the outsides, and J.S. next to Ms. Montenegro and A.S. next to Flook.

In the middle of the night, A.S. awakened when Flook put his hand on her upper thigh. Flook removed his hand and replaced it on A.S.'s hip area. Flook continued to remove his hand and replace it on A.S.'s body, moving it under her pants and eventually under her underwear, touching her vaginal area. A.S. turned away from Flook and put her arm between her legs at which point Flook grabbed her arm and whispered "come on." Report of Proceedings (RP) at 478.

A.S. eventually described the incident to a friend, C.S. Eventually, the incident was reported to Child Protective Services (CPS).

On August 24, 2015, the Whitman County Sheriff's Office received a report from CPS that detailed A.S. being sexually assaulted by Flook. Sheriff Brett Myers was assigned to investigate and arranged to jointly interview A.S. with CPS. During the interview, A.S. described to Sheriff Myers how Flook had touched her.

Sheriff Myers then interviewed Ms. Montenegro. She confirmed some details of A.S.'s story, including the sleeping arrangements in one bed and who slept next to whom.

2

Ms. Montenegro left the interview and returned with Flook the same day. During the interview, Flook seemed to struggle to remember the incident, as well as a number of other incidents described by A.S. of Flook touching her inappropriately. Sheriff Myers later testified that Flook's demeanor was that of someone who did not want to be there and was uncomfortable being interviewed.

The State charged Flook with one count of first degree rape of a child and one count of first degree child molestation. Following his arrest, Ms. Montenegro sold Flook's truck to Richard Chittenden, an acquaintance. Two to three months later, Mr. Chittenden discovered a universal serial bus (USB) thumb drive that had been hidden under the truck's dashboard.

Mr. Chittenden discovered a cache of pornographic videos stored on the device. Most of the videos were adult pornography, but two of the files were encoded differently. Mr. Chittenden opened the videos and found they were voyeuristic, homemade videos of a young girl bathing. Mr. Chittenden contacted Ms. Montenegro and played the videos for her and, at her request, sent the thumb drive to Sheriff Myers.

After receiving and reviewing the videos, Sheriff Myers obtained and executed a search warrant for the house where the videos were taken. By this time, Ms. Montenegro and the children had moved out of the house and the house was unoccupied. Sheriff

Myers went into the bathroom and confirmed the bathroom tile matched that shown in the video.  He also noticed a hole in the bathroom ceiling that matched the angle of where the video was shot.  Ms. Montenegro later testified only Flook had access to the attic above the ceiling, and he went up there a handful of times while they lived together.  She further testified J.S. did not have the ability to climb into the attic.

*Procedure and trial*

Before trial, Flook filed a motion to exclude evidence of his prior convictions. The State responded it would not introduce Flook's prior identity theft and possession of stolen property convictions in its case-in-chief, but reserved the right to do so pursuant to ER 609 if Flook testified.  The trial court granted Flook's motion.

*A.S.'s testimony at issue on appeal*

During A.S.'s direct examination, the State asked her to describe times Flook had touched her in a way that made her feel uncomfortable.  Defense counsel objected to the narrative form of the question, and the trial court sustained the objection.  The State then asked A.S. a series of leading questions, asking about each incident individually.  Defense counsel objected to the leading questions, but the trial court overruled the objection.

During A.S.'s cross-examination, defense counsel began to ask A.S. about details in the CPS report.  The trial court interrupted, stating it would not allow A.S. to read the

report without entering the report into evidence. The State responded that it would not object as long as the entire report was entered. Defense counsel did not request to admit the report. The same issue arose again through a different witness. Again, the State was willing to have the entire report admitted, but defense counsel did not request to admit the report.

*Ms. Montenegro's testimony at issue on appeal*

1.    *J.S. and A.S.*

Defense counsel cross-examined Ms. Montenegro. In one line of questioning, defense counsel asked whether Ms. Montenegro once caught J.S. and A.S. playing sex games together. She responded, "Absolutely not true." RP at 585.

2.    *Alex and A.S.*

In another line of questioning, defense counsel asked whether Ms. Montenegro once saw A.S. and a boy named Alex "doing inappropriate sexual things to one another at the park." RP at 587. She responded, "Never." RP at 587.

3.    *Discussion with Mr. Flook's aunt*

In still another line of questioning, defense counsel implied that Ms. Montenegro had told Mr. Flook's aunt she did not believe A.S.'s allegations. On redirect, the State asked Ms. Montenegro what she told Mr. Flook's aunt about A.S.'s allegations. She

replied, "I told her . . . about what happened that night that I believed A.S." RP at 604.

Defense counsel did not object to the question or Ms. Montenegro's answer.

*C.S.'s testimony at issue on appeal*

Defense counsel later cross-examined C.S., A.S.'s friend. Defense counsel asked

whether A.S. ever talked to her about "sexual contact she was having with her boyfriend,

Alex." RP at 630. The State objected. The trial court excused the jury, heard argument,

and ruled the testimony was inadmissible under the rape shield statute.

*Mr. Flook's testimony at issue on appeal*

1.      *Prior conviction involving dishonesty*

Flook elected to testify. On direct, Flook testified about a time when Ms.

Montenegro and he went to Australia for a vacation.

During cross-examination, the State asked, "You were being investigated for

identity theft at that time, correct?" RP at 801. Defense counsel objected and made an

oral motion for mistrial, arguing the court had ruled Flook's prior convictions were

inadmissible. The State responded that the question about Flook's identity theft

conviction was appropriate under ER 609 because, by testifying, Flook put his credibility

at issue. The trial court overruled defense counsel's objection and denied the motion for

mistrial.

>   *2.    Prior inconsistent statement of Ms. Montenegro*

On direct, defense counsel asked Flook about an incident involving A.S. and J.S.

The State objected. The State noted Ms. Montenegro had denied that her two children

were playing sex games.

Defense counsel responded:

>   [T]he State is trying to portray A.S. as an innocent waif, we have—the jury
>   should have an opportunity to hear all of the evidence.

RP at 761.

Defense counsel made an offer of proof. Counsel offered that Flook would testify

that he heard Ms. Montenegro and A.S. screaming and yelling in the bathroom. Ms.

Montenegro then came out upset and said she caught A.S. and J.S. experimenting

sexually and she physically disciplined A.S.

The State reiterated its objection based on the rape shield statute and added

additional objections—hearsay and ER 404. Defense counsel did not respond to these

additional objections. The court disallowed the testimony.

*Jury verdict, conviction, and punishment*

The jury found Flook guilty of first degree child molestation and not guilty of first

degree child rape. The trial court entered a judgment of conviction and sentenced Flook

to 186 months to life incarceration and also imposed a series of community custody

conditions, including

> 17. [He] [s]hall report to his supervising officer prior to entering into any romantic relationship with any person who has minor aged children.

> 18. He shall report his criminal history to any person, with minor aged children, with whom he is going to have a romantic relationship.

Clerk's Papers (CP) at 177.

Flook timely appealed his conviction.

## ANALYSIS

A.    EXCLUSION OF EVIDENCE PURPORTEDLY CRITICAL TO DEFENSE

Flook contends the trial court violated his federal and state constitutional rights by

excluding evidence vital to his defense theory. There are two exclusions Flook discusses.

The first exclusion involves his testimony of what Ms. Montenegro told him about J.S.

and A.S. The second exclusion involves C.S.'s possible testimony that Alex and A.S. had

engaged in sexual contact.

Both the Sixth Amendment to the United States Constitution and article I, section

22 of the Washington Constitution guarantee an accused the right to present a defense.

*State v. Hudlow*, 99 Wn.2d 1, 14, 659 P.2d 514 (1983). We review claims that a trial

court violated such rights de novo. *State v. Jones*, 168 Wn.2d 713, 719, 230 P.3d 576

(2010); *State v. Duarte Vela*, 200 Wn. App. 306, 317, 402 P.3d 281 (2017).

In *Jones*, our Supreme Court wrote:

> "The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations." *Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973). A defendant's right to an opportunity to be heard in his defense, including the rights to examine witnesses against him and to offer testimony, is basic in our system of jurisprudence. *Id*. . . .
> These rights are not absolute, of course. Evidence that a defendant seeks to introduce "must be of at least minimal relevance." [*State v. Darden*, 145 Wn.2d 612, 622, 41 P.3d 1189 (2002)]. Defendants have a right to present only relevant evidence, with no constitutional right to present *irrelevant* evidence. *State v. Gregory*, 158 Wn.2d 759, 786 n.6, 147 P.3d 1201 (2006).

*Jones*, 168 Wn.2d at 720.

Defense counsel explained the purpose of his client's testimony was to dispel the

notion that A.S. was an innocent waif. We infer defense counsel's purpose was similar

when he tried to elicit testimony from C.S. that A.S. had told C.S. that she and

Alex had engaged in sexual contact. The trial court excluded both proffers based on

RCW 9A.44.020(2), the rape shield statute, which provides in relevant part:

> Evidence of the victim's past sexual behavior including but not limited to the victim's . . . general reputation for promiscuity, nonchastity, or sexual mores contrary to community standards is inadmissible on the issue of credibility . . . .

Whether 11-year-old A.S. was an innocent waif or not, the law still protects her from sexual contact from an adult. Flook's purpose for admitting A.S.'s purported sexual misconduct was irrelevant. We conclude the trial court did not err by excluding the evidence.[1]

B.     PURPORTED OPINIONS ON DEFENDANT'S GUILT

Flook contends the trial court erred in allowing Ms. Montenegro and Sheriff Myers to give improper opinion testimony during trial. We disagree.

The Sixth Amendment of the United States Constitution and article I, sections 21 and 22 of the Washington Constitution guarantee a defendant the right to a trial by jury. "No witness, lay or expert, may testify to his opinion as to the guilt of a defendant, whether by direct statement or inference." *State v. Black*, 109 Wn.2d 336, 348, 745 P.2d 12 (1987). Such testimony is unfairly prejudicial to the defendant because it invades the province of the jury. *State v. Kirkman*, 159 Wn.2d 918, 927, 155 P.3d 125 (2007).

---

[1] On appeal, Flook argues his purpose for admitting the conduct between J.S. and A.S. was to establish J.S. sexually desired his sister and was the person who videotaped his sister in the bathtub. We reject this argument for two reasons. First, this was not the argument put forth by defense counsel when the State objected to Flook's testimony. Second, it is absurd to suggest a 10-year-old boy videotaped his naked sister, using a video camera—there was no evidence he owned—from an overhead attic he could not access and then hid the recording in a truck he did not drive.

When determining whether a witness gave improper opinion testimony, this court

looks to several factors including, "'(1) the type of witness involved, (2) the specific

nature of the testimony, (3) the nature of the charges, (4) the type of defense, and (5) the

other evidence before the trier of fact.'" *State v. Montgomery*, 163 Wn.2d 577, 591, 183

P.3d 267 (2008) (internal quotation marks omitted) (quoting *State v. Demery*, 144 Wn.2d

753, 759, 30 P.3d 1278 (2001)).

### 1. *What Ms. Montenegro told Flook's aunt*

Flook first argues Ms. Montenegro gave improper testimony when she testified

that she told Flook's aunt she believed A.S. Flook did not object to this testimony at trial.

Ordinarily, we will not review a claim of error not raised at the trial court.

RAP 2.5(a). One oft-noted exception permits us to review a claim of manifest error

affecting a constitutional right. RAP 2.5(a)(3). Although improper opinion evidence

affects the constitutional right to a jury trial, not all unpreserved claims of improper

opinion testimony are reviewable:

> Admission of witness opinion testimony on an ultimate fact, without
> objection, is not automatically reviewable as a "manifest" constitutional
> error. "Manifest error" requires a nearly explicit statement by the witness
> that the witness believed the accusing victim. . . .

*Kirkman*, 159 Wn.2d at 936.

Here, Ms. Montenegro did not testify she believed A.S. Instead, she testified she told Flook's aunt she believed A.S. Even if this testimony was sufficiently explicit to be reviewable, we do not believe there was any error.

The State did not elicit Ms. Montenegro's opinion on direct examination. Rather, the State elicited it on redirect examination, only after Flook's cross-examination left the jury with the impression Ms. Montenegro had told Flook's aunt she did not believe A.S.

When a party raises a material issue, they do so under the assumption the rules will permit cross-examination or redirect examination into the same matter. *State v. Crow*, 8 Wn. App. 2d 480, 505, 438 P.3d 541, *review denied*, 193 Wn.2d 1038, 449 P.3d 664 (2019). This allows a party to clarify an issue that would otherwise be left in the air for the finder of fact and keeps a party from taking advantage of half-truths. *Id.*

Flook asked questions that implied Ms. Montenegro had told Flook's aunt she did not believe A.S. We consider this "'other evidence before the trier of fact.'" *Montgomery*, 163 Wn.2d at 591 (quoting *Demery*, 144 Wn.2d at 759). This evidence permitted the State to ask on redirect what Ms. Montenegro actually told Flook's aunt. There was neither constitutional nor evidentiary error.

2.      *Sheriff Myers's statement of Flook's demeanor*

Flook contends Sheriff Myers gave improper opinion testimony when he said

Flook appeared uncomfortable being interviewed, like he did not want to be there.

This is not improper opinion testimony.  A witness is allowed to testify about their

observations of a person, including their demeanor.  In *State v. Aguirre*, 168 Wn.2d 350,

356, 229 P.3d 669 (2010), a police sergeant with extensive experience interviewing

victims of sexual assault interviewed the purported victim.  She testified about the general

demeanor of sexual assault victims and the demeanor of the alleged victim she

interviewed.  *Id.*  The Supreme Court concluded the trial court did not err by allowing the

police sergeant to testify about the victim's demeanor.  *Id.* at 360.

We contrast testimony about a person's demeanor with testimony that the

defendant was not credible or was untruthful.  In *State v. Hager*, 171 Wn.2d 151, 154,

248 P.3d 512 (2011), defense counsel brought a motion in limine to prohibit detectives

from testifying Hager's answers were evasive.  Counsel argued the detectives could

testify Hager avoided eye contact and appeared to be on methamphetamine.  *Id.* at 155.

Counsel argued, "'You can state the demeanor.  You can't say because of that I think he

was deceptive or evasive.'"  *Id.*  The trial court agreed.  During trial, one detective

testified about the defendant's demeanor—he was jittery, avoided eye contact, and

appeared to be under the influence of methamphetamine. A second detective, however, testified the defendant's demeanor was "'evasive.'" *Id.* The defendant moved for a mistrial, but the trial court denied it. The Supreme Court concluded the second detective's description of the defendant as "'evasive'" was improper opinion evidence. *Id.* at 158-59. One does not observe "evasiveness." Describing someone as "evasive" strongly implies the person was untruthful. Here, Sheriff Myers properly testified about Flook's demeanor, not whether he believed Flook or whether his answers were evasive.

C.     PURPORTED INEFFECTIVE ASSISTANCE OF COUNSEL

Flook contends his counsel was deficient because (1) he did not ask Flook about his convictions for identity theft on direct, (2) he did not move to admit the CPS reports and failed to substantiate its contents, and (3) he allowed the State to ask leading questions during a portion of A.S.'s direct examination. We disagree.

Washington courts have adopted a two-part test to determine whether defense counsel gives ineffective assistance. *State v. Hicks*, 163 Wn.2d 477, 486, 181 P.3d 831 (2008). This *Strickland*[2] test requires a defendant show (1) his counsel was deficient, represented by the counsel's performance falling below the objective standard of reasonable professional norms, and (2) the deficiency was prejudicial. *Id.* To show

---

[2] *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

14

prejudice, the defendant must show that, had counsel's performance not been deficient, there is a reasonable likelihood the outcome would have been different. *Id.*

Flook first contends his counsel was deficient for not asking him on direct examination about his prior convictions, which allowed the State to bring up the convictions on cross-examination. Even if defense counsel should have questioned Flook about his prior convictions, we do not see how this resulted in sufficient prejudice to change the outcome of the trial. The video evidence was damning. Flook had no credible explanation as to who else had access to the attic to shoot the video of A.S. bathing and who else would hide the evidence in his truck. The minimal prejudice resulting from his prior convictions not being drawn out on direct did not change the outcome of the trial.

Flook next contends his counsel was deficient because he did not move to admit the CPS report as evidence. Flook argues the CPS report would have greatly helped his defense. The State argues the CPS report would have been damning for Flook. Because the CPS report never was offered as an exhibit, we cannot tell whether Flook or the State is correct. For this reason, we do not review arguments which lack evidentiary support in the record. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

Flook finally contends his counsel was deficient for objecting to the State asking A.S. a question that called for a narrative response. The trial court agreed with defense

counsel and sustained the objection. The State then asked leading questions. Defense

counsel again objected. The trial court overruled the objection.

The leading questions disclosed prior incidents of Flook: (1) showing A.S. some

pornographic cartoons (cartoon characters having sex), (2) once asking A.S. to sit on his

lap, (3) telling A.S. that her mother had sex toys, and (4) telling A.S. that he had his own

porn site.

The third and fourth items certainly were prejudicial. But defense counsel's initial

objection was legally correct and did not necessarily result in prejudice. Without the

objection, A.S. may well have recalled the two more serious items. Also, without the

objection, the trial court had authority to permit the State to ask leading questions to help

jog a young witness's memory. *State v. Canida*, 4 Wn. App. 275, 279, 480 P.2d 800

(1971).

D.    TWO UNCONSTITUTIONALLY VAGUE COMMUNITY CUSTODY CONDITIONS

Flook contends two of community custody conditions are unconstitutionally vague.

The State rightly concedes this issue.

When a trial court suspends the sentence of a sex offender and releases the

offender into community custody, it must also impose certain conditions and may, at its

discretion, impose additional conditions related to the crime. RCW 9.94B.070;

16

RCW 9.94B.050; RCW 9.94A.703. Overbroad and vague community custody conditions may be challenged for the first time on appeal. *State v. Bahl*, 164 Wn.2d 739, 744, 193 P.3d 678 (2008).

This court reviewed another case where the term "romantic relationship" was used in a community custody standard. *State v. Casimiro*, 8 Wn. App. 2d 245, 251, 438 P.3d 137, *review denied*, 193 Wn.2d 1029, 445 P.3d 561 (2019). This court held the term "romantic" was unconstitutionally vague and recommended, on remand, the trial court substitute the phrase "dating relationship." *Id.* We see no reason to diverge from *Casimiro* here and direct the trial court on remand to substitute the phrase "dating relationship" in the two community custody standards.

STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW (SAG)

In accordance with RAP 10.10, Flook raises four additional grounds for review.

SAG I:  PURPORTED TRIAL COURT ERROR IN NOT EXCLUDING THUMB DRIVE

Flook contends the trial court erred by denying his CrR 3.6 motion to exclude the thumb drive. He argues the thumb drive was searched without a warrant and there is a chain of custody issue. However, the court denied the motion on both procedural and substantive grounds, and Flook does not address the procedural ground.

17

Flook filed his CrR 3.6 motion to suppress on Thursday, December 6, 2018. Trial commenced on Monday, December 10, 2018. The trial court denied the motion, in part, because it was not timely filed. In deciding it was not timely filed, the court found "[t]he motion is based upon factual assertions known to the defense for more than a year and the Defendant failed to move for suppression until mere days before trial." CP at 162. The court additionally found the late filing forced the State to forego trial preparations, delayed trial, and inconvenienced the jury.

Evidentiary rulings related to trial procedure are reviewed for an abuse of discretion. *State v. McLaughlin*, 74 Wn.2d 301, 303, 444 P.2d 699 (1968). A motion to suppress must be timely. *State v. Burnley*, 80 Wn. App. 571, 572, 910 P.2d 1294 (1996). A defendant seeking to suppress evidence must move for suppression within a reasonable time before the case is called for trial. *State v. Robbins*, 37 Wn.2d 431, 432, 224 P.2d 345 (1950). In *State v. Baxter*, 68 Wn.2d 416, 423, 413 P.2d 638 (1966), the court held exclusion of improperly obtained evidence is a privilege that can be waived if a defendant fails to seasonably object. The trial court did not abuse its discretion by finding Flook's motion to suppress was untimely.

18

Additionally, there was no requirement for the State to establish a "chain of title" to admit the thumb drive. ER 901(a) provides: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Here, the State claimed the thumb drive belonged to Flook. There was sufficient evidence to support the State's claim. First, the video was made by a person with access to both the attic in the house where Flook formerly lived and the truck that Flook formerly drove. This likely limits the owner of the thumb drive to four people: Flook, Ms. Montenegro, or the two children. Ms. Montenegro testified she did not take the video of her own daughter bathing. There would be no reason for A.S. to film herself bathing. And young J.S. was unable to access the attic. We conclude the State sufficiently authenticated the thumb drive as belonging to Flook.

SAG II: ADDITIONAL IMPROPER OPINION TESTIMONY

Flook contends another witness, Nicole Konen, a child counselor called as an expert witness for the State, gave improper opinion testimony. We disagree.

Flook argues Ms. Konen's testimony in this case was a clear and explicit statement of her opinion that A.S. was telling the truth about her assault and, thus, Flook was lying. Flook tries to distinguish this case from *Kirkman* where a counselor's testimony that an

assault had happened was held to not be opinion testimony.  159 Wn.2d at 930-31.

Nevertheless, the statement made by Ms. Konen during her testimony is not dissimilar

from the testimony in *Kirkman*.

First, Flook in his SAG brief misquotes Ms. Konen, writing, "Counselor Konen

made an explicit or at least an almost explicit statement on whether A.S. was telling the

truth by opining 'what she shared with me led me to believe the sexual abuse had

occurred, based on her training and experience, she was telling the truth.'"  SAG at 9.

However, this is not what Ms. Konen said during trial, instead stating, "What she shared

with me led me to believe that the excessive preoccupation with sex, the sexting, the

behaviors that were identified at the beginning of our therapeutic relationship were

related and an impact from the sexual abuse that had occurred in the previous months."

RP at 249.

Beyond this statement, Ms. Konen also made statements that, during her interview

with A.S., she came to believe A.S. had been sexually abused, which meant Ms. Konen

had to report there had been a sexual abuse.  Finally, Ms. Konen stated the sexual abuse

had caused A.S. to have trouble in school and in her life.

None of these statements were an expression of A.S.'s credibility or Flook's guilt. They are much like the statements made by the physician in *Kirkman*, who said the victim's story of sexual touching was consistent with someone who had been abused. 159 Wn.2d at 929. In both cases, the witness was testifying to signs that some abuse had occurred, not to the specific credibility of the victim's accusations.

Because Ms. Konen's statements were general about abuse having had occurred and did not touch on whether A.S.'s account of the abuse was what had happened, we conclude Ms. Konen's statements were not improper opinion testimony.

SAG III: VIOLATION OF MOTION IN LIMINE

Flook argues the trial court erred in not granting his motion for mistrial because the State violated a motion in limine when it brought up Flook's previous identity theft convictions. We disagree.

The motion to exclude evidence of the prior convictions read,

> The defense moves to exclude all evidence of Mr. Flook's conduct in relation to his prior convictions. This conduct is not relevant to prove that he is guilty of the crimes charged in this case. Further, evidence of any prior conduct, in relation to his convictions, is highly prejudicial and should be excluded from trial. *If Mr. Flook choses to testify, evidence of his 2002 ROC [rape of a child] conviction should not be admissible pursuant to ER 609.*

21

CP at 55-56 (emphasis added). The original motion requests barring the State from admitting evidence of Flook's conduct in its case-in-chief and to bar the State from using the 2002 conviction as impeachment evidence if Flook testified.

In its reply brief, the State wrote, "[w]ith regard to the Defendant's convictions for Identity Theft and Possession of Stolen Property in 2012, the State would not seek to introduce these in its case-in-chief, but should properly be allowed to do so, in the event that the Defendant testifies pursuant to ER 609." CP at 73. The trial court granted the motion without commenting on the specifics.

The question the State asked Flook during cross-examination did not relate to Flook's 2002 rape of child conviction, but related instead to his 2012 identity theft conviction. This is not a violation of the motion in limine.

SAG IV: WITNESS NOT SWORN IN

Flook contends C.S. was not properly sworn in under ER 603 and this error requires reversal. However, this error was not properly preserved in the trial court below and is not an error of constitutional magnitude allowing for review. *See State v. Avila*, 78 Wn. App. 731, 738, 899 P.2d 11 (1995); RAP 2.5(a)(3).

No. 36610-3-III
*State v. Flook*

Affirmed in part; remanded.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____          _____
Pennell, C.J.                                         Fearing, J.

23